Leroy Bishop, Jr. v. Town of Barre and Travellers'
Insurance Company

[442 A.2d 50]

No. 393-80

Present: **Barney, C.J., Billings, Hill, Underwood and Peck, JJ.**

Opinion Filed February 2, 1982

566

George K. Belcher of *Abare, Donaghy & Nicholls, P.C.,* Barre, for Plaintiff.

Leo A. Bisson, Jr., of *Downs, Rachlin & Martin,* St. Johnsbury, for Defendants.

Hill, J. This case concerns the proper standard for computing benefits under the Vermont Workmen's Compensation Act, 21 V.S.A. §§ 601–709. The claimant, Leroy Bishop, challenges the amount of compensation he was awarded by the Commissioner of Labor and Industry. The claimant also contests the denial of vocational rehabilitation benefits.

## I.

The facts in this case are straightforward. On October 3, 1973, the claimant suffered an injury to his back while employed as a laborer by the Town of Barre. Although he returned to work for short periods of time, he has not worked since October of 1977. From December 15, 1973, to April 8, 1974, and from October 3, 1977, to January 22, 1979, the claimant received temporary total disability benefits. On January 22, 1979, the defendants discontinued temporary benefits on the ground that the claimant had reached the "end result" of the healing process.

The claimant filed for permanent disability and vocational rehabilitation benefits. At the hearing on these claims, the medical testimony stood uncontradicted: the claimant's back impairment would not improve, resulting in a thirty-five to forty per cent permanent impairment of the spine, and a twenty per cent impairment to the whole man. The claimant also adduced testimony that, taking account of his age, training, and educational background, he would be unable to work again. In addition, the claimant presented a vocational rehabilitation plan, under which the claimant would receive $2,695.00 in funds to establish a small livestock venture at his home. The return on this vocational rehabilitation plan was estimated at approximately $200.00 annually.

The Commissioner found that the claimant was entitled to sixty-six weeks of permanent partial disability benefits, computed on the basis of a twenty per cent impairment to the whole man. The Commissioner based this decision on medical evidence alone, and did not address the claimant's age, education, or training. The claimant was denied vocational rehabilitation benefits. The Commissioner also deducted $145.56 from the claimant's compensation award, because of overpayments of temporary disability benefits.

The claimant appealed the Commissioner's decision to the Washington Superior Court, which certified the following questions to this Court under V.R.A.P. 5 (a):

(1) Did the Commissioner of Labor and Industry err in concluding that claimant was only 20% permanently disabled?

(2) Is the Commissioner of Labor and Industry's conclusion of 20% permanent partial disability in error because it is based only on permanent physical impairment and not permanent economic impairment?

(a) Did the Commissioner of Labor and Industry err in not finding that the claimant has sustained permanent economic impairment?

(3) Was it error for the Commissioner of Labor and Industry to conclude the claimant is only 20% permanently partially disabled in light of Dr. Felix Callan's testimony that claimant sustained a 20% permanent partial disability to the "whole man" and 35–40% permanent partial disability to his spine?

(4) Is the claimant entitled to the payment of $2,695.00 for the purpose of vocational rehabilitation?

(5) Was there an overpayment of temporary disability benefits pursuant to 21 V.S.A. § 650 (d)?

We answer questions one, three, and five in the affirmative, and two, two (a), and four in the negative, for reasons which will be discussed in the remainder of this opinion.

## II.

### A.

The Vermont Workmen's Compensation Act pro-

vides two distinct classes of benefits. Temporary disability benefits are provided for workers who suffer a "disability for work," 21 V.S.A. §§ 642, 646, during the period between their injury and final recovery. Once the recovery process has ended, or the worker has achieved the maximum possible restoration of his earning power, he is no longer entitled to temporary disability benefits. At this point, the worker has reached the "end result" of the healing process. *Moody v. Humphrey & Harding, Inc.*, 127 Vt. 52, 57, 238 A.2d 646, 649 (1968); *Orvis v. Hutchins*, 123 Vt. 18, 24, 179 A.2d 470, 474 (1962). Because the claimant's condition has reached an "end result," claims for benefits are then treated under the permanent disability sections, 21 V.S.A. §§ 644, 648. See *Orvis v. Hutchins, supra*, 123 Vt. at 24, 179 A.2d at 474.

 Our case law has established different criteria for computing temporary, as opposed to permanent, benefits. Temporary disability benefits are awarded on the basis of an individual's incapacity for work. See *Sivret v. Knight*, 118 Vt. 343, 346, 109 A.2d 495, 497–98 (1954); *Roller v. Warren*, 98 Vt. 514, 517–18, 129 A. 168, 169–70 (1925). This involves consideration of not only physical injury, but also of other factors restricting the claimant's capacity to obtain work. See *Gee v. City of Burlington*, 120 Vt. 472, 476–77, 144 A.2d 797, 799–800 (1958). In contrast, permanent disability benefits are calculated solely on the basis of physical impairment: "[The permanent disability] statute has arbitrarily fixed the amount of compensation to be paid for scheduled specific injuries regardless of loss of present earning power." *Beane v. Vermont Marble Co.*, 115 Vt. 142, 145, 52 A.2d 784, 786 (1947). See *Orvis v. Hutchins, supra*, 123 Vt. at 22–23, 179 A.2d at 473 (comparing temporary and permanent disability sections).

The claimant challenges the validity of these different standards set forth in Vermont case law. He asserts that permanent disability, like temporary disability, should be evaluated by reference to any factor which restricts capacity for work. In support of this position, he advances several arguments. First, he contends that the Act's use of the word "disability" connotes more than physical impairment, thereby requiring evaluation of ability to work. Second, he asserts that by allowing compensation for unscheduled injuries, see 21

V.S.A. §§ 644(b), 648(20), the Act sanctions consideration of factors other than physical injury. Third, he argues that the purpose of the statute is to compensate for lost wages, which requires consideration of capacity for work. Thus, he concludes that the Commissioner erred in failing to consider the claimant's ability to work, and in relying solely on physical impairment in setting compensation.

The claimant's arguments do not persuade us to reject our precedent. Earning capacity is significant to the Workmen's Compensation Act, but it performs a far different function than envisioned by the claimant.

The claimant correctly assigns protection against wage loss as one of the Act's purposes. The Act, however, also seeks to establish an expedient, efficient remedy for injured workers. See *Kittell* v. *Vermont Weatherboard, Inc.*, 138 Vt. 439, 441, 417 A.2d 926, 927 (1980) (quoting *Morrisseau* v. *Legac*, 123 Vt. 70, 76, 181 A.2d 53, 57 (1962)). Simplifying the elements of recovery is the Act's mechanism for achieving efficiency. To be entitled to benefits, a claimant need only establish that he suffered "a personal injury by accident arising out of and in the course of his employment by an employer subject to [the Act]." 21 V.S.A. § 618. The employee need not show that the employer was negligent, see *Grenier* v. *Alta Crest Farms, Inc.*, 115 Vt. 324, 328, 58 A.2d 884, 887 (1948), or that he actually suffered a wage loss. See *Beane* v. *Vermont Marble Co.*, *supra*, 115 Vt. at 144, 52 A.2d at 785–86. Because resolution of these issues on a case by case basis would impede the process, thereby delaying awards to needy beneficiaries, the legislature has chosen a "scheduled benefits" system. The rate of compensation for listed injuries has been conclusively determined in the Act. See 21 V.S.A. §§ 644, 648. The system still protects against wage loss, but it fulfills this aim by awarding permanent disability benefits on the basis of physical impairment as a *means* to insure against wage loss. Professor Larson explains how a scheduled benefits system, such as Vermont's, insures against wage loss:

> [Exclusion of individual wage loss evidence] is not, however, to be interpreted as an erratic deviation from the underlying principle of compensation law—that benefits relate to loss of earning capacity and not to physical

injury as such. The basic theory remains the same; the only difference is that the effect on earning capacity is a conclusively presumed one, instead of a specifically proved one based on the individual's actual wage-loss experience.

2 A. Larson, Workmen's Compensation Law § 58.11, at 10-173 to 174 (1981) (footnotes omitted).

█ The yardstick is general, not particular. The total disability section compensates for injuries which, as a general rule, tend to have the most severe impact on earning capacity. The partial disability section compensates for injuries which generally have a less serious impact, and rates the scheduled impairments accordingly.

█ The claimant's arguments that the plain meaning of disability and the presence of compensation for unscheduled injuries compel consideration of individual wage loss must be rejected in light of the elaborate and carefully drawn scheme of scheduled benefits. See Beane v. Vermont Marble Co., supra, 115 Vt. at 145, 52 A.2d at 786. The Act enumerates "partial disabilities" in 21 V.S.A. § 648, and "total disabilities" in 21 V.S.A. § 644. Yet, each of the "partial disabilities" could, depending upon a person's age, occupation, and training, prevent a worker from obtaining employment. Similarly, a worker could suffer a disability listed as "total," yet return to his or her previous job.[1] If we were to inject individual wage loss into this scheme, as urged by the claimant, we would effectively collapse the distinctions between total and partial benefits explicitly drawn by the legislature.

█ The claimant also points to the statutory definition of "partial disability" as supporting his position. Subsection ten of 21 V.S.A. § 601 states: " 'Partial disability' may be held to include diminished ability to obtain employment owing

---

[1] For example, a typist might be able to work after losing both feet, yet be "totally disabled" under 21 V.S.A. § 644(a)(2). The loss of one hand would prevent the same typist from returning to work, yet, the injury would be a "partial disability" under 21 V.S.A. § 648(4). Indeed, the claimant himself would be unable to resume work as a laborer if he suffered any one of several of the impairments scheduled in 21 V.S.A. § 648.

to disfigurement resulting from an injury." Thus, the claimant argues, individual ability to work is, by definition, a factor in computing benefits. This analysis collapses under careful scrutiny. First, it ignores the theory of a scheduled benefits act and the carefully drawn distinction between partial and total disability, subjects previously discussed in this opinion. Second, there is a more plausible application of the definition: it only addresses the award of temporary benefits under 21 V.S.A. § 646, the temporary disability section. As previously discussed, ability to work is a crucial factor in awarding temporary disability benefits. The section dealing with temporary disability awards compensation "[w]here the disability for work resulting from an injury is partial." 21 V.S.A. § 646. The permanent disability section awards compensation on the basis of "sixty-six and two-thirds percent of the average weekly wages ... for the periods stated against such injuries respectively." 21 V.S.A. § 648. Thus, although the headnote to the permanent disability section contains the defined term, its text does not. This contrasts with the quoted portion of the temporary disability section.

■■■ Given the Act's history and structure, we must reject the claimant's contention that individual wage loss should be considered in computing permanent benefits. The plain meaning of the statute precludes consideration of individual wage loss. We reaffirm the distinction between temporary and permanent benefits.

### B.

The claimant advances another context for the consideration of individual wage loss. Under 21 V.S.A. §§ 644(b), 648(20), the Commissioner is empowered to award benefits for unscheduled injuries. The claimant argues that the proper metric for evaluating the severity of unscheduled injuries is impairment to an individual's earning capacity. He asserts that it was improper for the Commissioner to ignore his earning capacity in computing benefits. Again, we disagree with the claimant.

The claimant's argument is best understood as an attack upon a regulation of the Department of Labor and Industry governing the computation of benefits for unscheduled injuries, which the Commissioner relied upon in this case. See

Rule 10, Rules Pertaining to Workmen's Compensation and Occupational Diseases (hereinafter cited as Rule 10). Rule 10 awards benefits solely on the basis of physical impairment, without reference to individual earning capacity. The bases for computations are schedules for certain injuries, see Rule 10(a), and, for other injuries, the American Medical Association authored *Guides to the Evaluation of Permanent Impairment* (1977). See Rule 10(b).

Of course, we need not address the validity of each part of Rule 10 to decide this case. We do conclude, however, that enacting Rule 10 was an authorized use of the Commissioner's implicit powers under the Act. See *DeGray* v. *Miller Brothers Construction Co.,* 106 Vt. 259, 267–68, 173 A. 556, 559 (1934); *Bosquet* v. *Howe Scale Co.,* 96 Vt. 364, 368, 120 A. 171, 172 (1923). In addition, Rule 10 employs the criteria outlined in the statute itself. It awards benefits on the basis of physical impairment alone, and specifies benefits in a manner proportionate to the awards enumerated in the statute. The remaining question is whether Rule 10 comports with the dictates of the Workmen's Compensation Act.

The total disability section states that the scheduled disabilities are not exclusive, but provides no criteria for evaluating unscheduled impairments. See 21 V.S.A. § 644(b). The partial disability section, however, requires that unscheduled injuries be compensated proportionately to the compensation awarded for scheduled impairments: "In all other cases in this class, or where the usefulness of a member or any physical function is permanently impaired, the compensation shall bear such relation to the amount stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule." 21 V.S.A. § 648(18). See *Jacobs* v. *Holden Leonard Co.,* 110 Vt. 245, 252–53, 4 A.2d 343, 346–47 (1939). We believe that the same standard is required for evaluating total impairment under 21 V.S.A. § 644(b). To be proportionate, awards for unscheduled injuries must be computed with reference to the criteria underlying the awards for scheduled impairments. Those criteria, as discussed in Part II A of this opinion, address impairment to wage loss on a general, not individual, basis.

■ We conclude that it is correct for the Commissioner to rely upon Rule 10 and evaluate disability without reference to the claimant's ability to work. Individual economic capacity is rejected in the Act, and irrelevant to the evaluation of unscheduled injuries. The sole criterion of permanent disability is physical impairment which is properly employed in Rule 10. We now turn to whether the Commissioner correctly calculated physical impairment in this case.

### III.

Certified questions one and three present the same issue: whether, based on the evidence in the record, the Commissioner's decision, finding the claimant to be twenty per cent permanently partially disabled, correctly computes his physical impairment. The issue can be narrowed considerably. Our holding concerning the effect of an individual's economic impairment on the award of benefits precludes our finding the claimant to be totally disabled. There is no medical evidence that the claimant suffers an impairment approaching the severity of those listed in 21 V.S.A. § 644. Thus, it is clear that the claimant is only entitled to partial disability. Furthermore, there is no dispute concerning the medical evidence, which was uncontradicted. The only remaining question is the legal effect of that evidence.

The medical testimony indicated, and the Commissioner found, that the claimant suffered a thirty-five to forty per cent impairment of the spine, resulting in a twenty per cent impairment of the "whole man." The Commissioner awarded compensation on the basis of the twenty per cent figure, which yielded sixty-six weeks of benefits. The claimant argues that it was error not to use the thirty-five to forty per cent figure, which would yield 115.5 to 132 weeks of benefits.

The issue is whether impairment to the "whole man" or impairment to the affected part of the body is the proper standard. Back injuries are not scheduled under 21 V.S.A. § 648. Rule 10(a)(3) addresses the level of compensation for back injuries:

> The back. In the event an employee receives a personal injury by accident arising out of and in the course of his employment resulting in the permanent and complete loss

of the use of his back the employee shall be entitled to 330 weeks of compensation. If the loss of the use of his back is partial he shall be entitled to that percentage of 330 weeks of compensation which is represented by the loss.

In assessing what figure is "the percentage . . . represented by the loss," the Commissioner used the whole man figure. His reasoning was that the maximum recovery allowable for total disability is 330 weeks. See 21 V.S.A. § 645. Therefore, benefits for back impairments are calculated on the basis of the percentage of disability caused to the "whole man." The claimant argues that the percentage of loss to the back is the appropriate standard. We agree with the claimant.

Interpretations of their own regulations by administrative agencies are usually given great weight by this Court. See *In re Brooks*, 130 Vt. 83, 85–86, 286 A.2d 279, 281 (1971). Yet, in this case, we believe that the Commissioner's interpretation of Rule 10(a)(3) is clearly erroneous. The Act, in providing compensation for unscheduled injuries, focuses solely upon the injuries themselves. The statute allows benefits for "all other cases in this class, or where the *usefulness of a member or any physical function is permanently impaired.*" 21 V.S.A. § 648(18) (emphasis added). Similarly, the rule itself only makes reference to "loss of the use of [the] back." Rule 10(a)(3). Nowhere, in either the rule or the statute, is reference made to any criterion other than impairment to the injured body part. Using 330 weeks as the basis for calculating benefits does not, as the Commissioner apparently held, alter the plain language of the rule. If a claimant completely lost the use of his back, he would be totally disabled within the meaning of 21 V.S.A. § 644(b). The 330-week figure simply reflects the severity of back injuries, and assures that compensation for back impairments will be proportional to the scheduled benefits. See Part II A of this opinion, *supra*.

Given these factors, the Commissioner erred in interpreting Rule 10(a)(3) by reference to a "whole man" standard. The claimant's benefits should have been calculated on the basis of his back impairment, which is thirty-five to forty

per cent. It is axiomatic that an administrative agency must follow its own substantive regulations in deciding contested cases. Cf. *Nzomo* v. *Vermont State Colleges,* 136 Vt. 97, 100, 385 A.2d 1099, 1101 (1978) (defined dismissal procedures must be followed by agency). See generally Note, *Violations by Agencies of Their Own Regulations,* 87 Harv. L. Rev. 629 (1974). Thus, the Commissioner's decision must be reversed. On remand, the Commissioner should award benefits on the basis of the claimant's thirty-five to forty per cent back impairment.

## IV.

The next issue concerns the Commissioner's denial of vocational rehabilitation benefits. The claimant challenges the denial on two grounds. First, he asserts that it was error for the Commissioner to reject his proposed rehabilitation plan. Second, he contends that even if the Commissioner was correct in rejecting his proposed plan, the Commissioner was under a statutory duty to offer an alternative plan.

The Workmen's Compensation Act specifically ties vocational rehabilitation benefits to the restoration of earning skills. It states that an individual is entitled to retraining "as may be reasonably necessary to restore him to suitable employment." 21 V.S.A. § 641(b). In this case, the claimant admits that the proposed rehabilitation plan would not enable him to obtain significant remuneration. The undisputed testimony was that the plan, costing $2,695.00, would only result in $200.00 annual income. This return is insufficient to elevate the project to "suitable employment" under 21 V.S.A. § 641(b). Thus, the Commissioner was correct in denying the vocational rehabilitation plan.

The claimant's contention that the Commissioner was obligated, because the claimant was entitled to rehabilitation, to proffer an acceptable plan is similarly without merit. He relies on language in 21 V.S.A. § 641(b) which provides that an injured worker is "entitled to such vocational rehabilitation services . . . as may be reasonably necessary to restore him to suitable employment." The statute then authorizes the Commissioner to hold an informal hearing, and refer the injured worker to medical and vocational personnel for

evaluation. Although injured workers are entitled to rehabilitation, they are only entitled if the proffered plan will result in suitable employment. Furthermore, it is not incumbent on the Commissioner to establish such entitlement. At most, his obligation is to exercise discretion in referring claimants for vocational evaluation. There is no evidence to indicate that the Commissioner abused his discretion in this case. Therefore, we affirm the Commissioner's denial of vocational rehabilitation benefits.

## V.

The final point of contention between the parties is whether the Commissioner was correct in holding that an overpayment of temporary disability benefits, totalling $145.56, should be deducted from the claimant's permanent award. The claimant concedes that he received excessive payments, but contends that the deduction is unconstitutional under the Vermont Constitution. Yet, he neither cites any specific provision of the Vermont Constitution, nor any other authority, to support his claim.

■■■ Time and again we have reiterated our position on inadequate briefing: this Court will not search the record for errors inadequately briefed. See, e.g., Quazzo v. Quazzo, 136 Vt. 107, 111, 386 A.2d 638, 641 (1978); State Highway Board v. Pratt, 127 Vt. 385, 390, 250 A.2d 726, 729 (1969). Furthermore, our own research has uncovered statutory authority for the Commissioner's action. The Commissioner is empowered to deduct "from the amount to be paid as compensation" the amount of prior payments that "were not due and payable." 21 V.S.A. § 651. Thus, we affirm the Commissioner's decision deducting the amount of overpaid temporary benefits from the permanent award.

*Certified questions one, three, and five are answered in the affirmative. Certified questions two, two(a), and four are answered in the negative. The case is remanded for the entry of an award consistent with this opinion.*