## Thomas Wroten v. R. I. Lamphere

[523 A.2d 1236]

No. 85-388

Present: Hill, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed January 16, 1987

---

* For a general discussion of the issue of attorney's fees, see *Parker, Lamb & Ankuda, P.C.* v. *Krupinsky*, 146 Vt. 304, 503 A.2d 531 (1985).

*William M. McCarty* and *Adam M. Kushner* (On the Brief), Brattleboro, for Plaintiff-Appellant.

*Austin D. Hart* of *Dinse, Erdmann & Clapp*, Burlington, for Defendant-Appellee.

**Hill, J.** This is a workers' compensation case in which the claimant appeals a decision of the Commissioner of Labor and Industry (Commissioner) denying his claim for temporary total disability compensation through the period of his vocational rehabilitation.

The claimant suffered a work-related back injury on June 9, 1980. He received treatment from a number of physicians through late 1982 in conjunction with a difficult recovery from his injury. In early 1982, because of claimant's lack of healing progress, his case was referred to Stephanie Andrew, a rehabilitation nurse hired by the employer's insurance carrier, CNA Insurance Company (CNA), for a determination regarding the appropriateness of claimant's present and future medical treatment. Throughout her participation in the case, communication between Andrew and claimant was difficult, stemming primarily from claimant's desire that she communicate with him through his attorney's office.

On November 29, 1982, claimant's treating physician determined that he had reached a medical end result in his treatment, with a 36% permanent disability rating. Because claimant had reached a medical end result, and in view of claimant's progress under the supervision of a state vocational rehabilitation coun-

selor in a training program aimed at eventual reemployment as a real estate photographer, Andrew closed claimant's file in December, 1982.

In early February, 1983, CNA notified the Commissioner that total temporary disability payments would cease as of February 18, 1983, and permanent partial disability benefits would be paid thereafter. CNA requested that claimant sign an Agreement of Permanent Partial Disability Compensation, but he declined to do so. CNA nevertheless paid permanent benefits on a voluntary basis.

Meanwhile, claimant's initial rehabilitation efforts failed, and in April, 1983, he proposed another vocational rehabilitation plan and requested CNA's financial assistance. Claimant planned to attend a twenty-one week photography school. CNA agreed to cover the tuition and expenses. Claimant was involved in the program from October, 1983, until April, 1984, but failed to complete the course requirements.

As of February, 1984, claimant still had not signed the permanent partial disability compensation agreement. At that time, his attorney stated to CNA that it was his position that permanent partial disability benefits should not start until the claimant had completed his vocational rehabilitation, and that he should receive temporary total disability benefits during that period. CNA disagreed, so the parties agreed to submit the question to the Commissioner. 21 V.S.A. § 663. After hearing, the Commissioner ruled in CNA's favor, and this appeal followed.

The Commissioner has certified three questions for review by this Court. 21 V.S.A. § 672. The questions, which we will address seriatim, are:

(1) Was the commissioner correct in denying temporary total disability compensation to the claimant during the period of his vocational rehabilitation or until he returned to work?

(2) Is a defendant employer obligated to develop a rehabilitation plan for an injured employee?

(3) Was the Commissioner correct in denying the claimant attorney fees and costs pursuant to 21 V.S.A. § 678(a)?

I.

Claimant's main argument is that during the course of a full-time vocational rehabilitation program, an injured employee receiving workers' compensation benefits should be considered totally disabled for work and therefore entitled to receive temporary total disability compensation under 21 V.S.A. § 642.* The thrust of claimant's argument is that his recovery process has not ended until his vocational rehabilitation is complete. The claimant relies on language in *Bishop* v. *Town of Barre*, 140 Vt. 564, 442 A.2d 50 (1982), where we stated that:

> Our case law has established different criteria for computing temporary, as opposed to permanent, benefits. Temporary disability benefits are awarded on the basis of an individual's incapacity for work. This involves consideration of not only physical injury, but also of other factors restricting the claimant's capacity to obtain work. In contrast, permanent disability benefits are calculated solely on the basis of physical impairment . . . .

*Id.* at 571, 442 A.2d at 52 (citations omitted). He argues that his full-time training program is just the type of "other factor" referred to in *Bishop* that establishes his total incapacity for work, making him entitled to temporary total disability benefits through the period of his vocational rehabilitation. We disagree.

In *Orvis* v. *Hutchins*, 123 Vt. 18, 179 A.2d 470 (1962), this Court distinguished between the two types of disability, temporary and permanent, recognized under the Vermont Workers' Compensation Act. Temporary disability is a "condition of reduced earning power that exists until the injured workman is as far restored as the permanent character of his injuries will permit. It is measured by the duration of the healing period." *Id.* at 24, 179 A.2d at 474. Temporary disability benefits, accordingly, compensate the employee for "the immediate or present loss of wages during the period of physical recovery . . . ." *Id.* at 22, 179 A.2d at 473.

Permanent disability benefits, on the other hand, are designed "to compensate for the probable reduction in earning

---

* 21 V.S.A. § 642 provides, in relevant part: "Where the injury causes total disability for work, the employer during such disability . . . shall pay the injured employee a weekly compensation . . . ."

power that will attend the employee for the remainder of his working life." *Id.* Permanent disability is established when the injured employee reaches a medical end result or maximum earning power is restored through resumption of employment, despite continuing medical treatment. At that point, he becomes eligible for scheduled benefits. *Id.* at 24, 179 A.2d at 474; see 21 V.S.A. §§ 644, 648.

In this case, claimant's healing period ended on November 29, 1982, and the Commissioner correctly applied the holding of *Orvis* in terminating temporary benefits on that date. This is not to say, however, that temporary disability benefits can never be extended beyond the medical end point, if exceptional circumstances exist to justify such an extension. In *Gee v. City of Burlington*, 120 Vt. 472, 475-77, 144 A.2d 797, 798-800 (1958), we upheld an order of the Commissioner granting temporary total disability benefits to claimant, even though he had reached a medical end result. *Id.* at 475-77, 144 A.2d at 798-800. We reasoned that the Commissioner's consideration of claimant's age, low educational level, and lack of qualifications, in addition to physical impairment, was proper in determining that claimant was totally disabled for work. *Id.* On that basis, the claimant was entitled to temporary benefits until suitable employment could be found. *Id.*

Our holding in *Gee*, however, provides no support for claimant's argument. First, the claimant in *Gee* was not participating in a vocational rehabilitation program. Moreover, the crucial factor underlying the *Gee* decision was that claimant's injuries, in combination with the other considerations outlined above, prevented him from obtaining any viable employment. Unlike the claimant here, the claimant in *Gee* was prevented from obtaining any suitable employment by conditions beyond his control. In contrast, the claimant here has voluntarily chosen to undergo vocational rehabilitation in order to acquire new earning skills. Hinging the duration of the period of temporary disability on a claimant's voluntary participation in a vocational rehabilitation program would be clearly contrary to the legislative scheme.

The legislature has carefully juxtaposed vocational rehabilitation under 21 V.S.A. § 641 with other benefits available under the statute so that appropriate incentives are maintained. Section 641 provides for payment of vocational rehabilitation costs by the employer, when appropriate, in order to encourage

participation in such programs. An injured worker may also be eligible for permanent disability benefits under §§ 641 and 648 while he undergoes rehabilitation. If entitlement to temporary benefits could be tied to continued participation in vocational rehabilitation, as claimant argues, the incentive would be to stay in such a program for as long as possible in order to collect greater temporary benefits. Injured employees would be encouraged to delay reentry into the productive work force, a result clearly contrary to the policy underlying § 641. Accordingly, we hold that a claimant participating in a vocational rehabilitation program is not entitled to temporary total disability benefits if he has reached a medical end to treatment for his work-related injuries.

## II.

The second certified question, relating to question of CNA's obligation to develop a vocational rehabilitation program for claimant, stems from the claimant's assertion that CNA acted in bad faith in handling his claim. Claimant charged below that CNA's representative, Stephanie Andrew, acted in bad faith by representing to claimant that she would develop a vocational rehabilitation plan for him, and then delaying and ultimately failing to provide him with such a plan. Claimant argues that because he relied to his detriment on Andrew's representations, CNA should now be estopped from denying him total temporary disability benefits through the period of his vocational rehabilitation.

The fatal flaw in claimant's argument is the absence of any credible evidence in the record to overcome the Commissioner's Finding No. 22, which states that:

Ms. Andrew never indicated to the claimant or to the claimant's attorney that her purpose was to develop a vocational rehabilitation plan. Her role was to monitor and assess the claimant's medical treatment and rehabilitation efforts.

The findings of the Commissioner are binding on this Court if supported by the evidence, *Lapan* v. *Berno's Inc.*, 137 Vt. 393, 395, 406 A.2d 390, 391 (1979), and we will test the sufficiency of the facts from a point of view favorable to the award. *Moody* v. *Humphrey & Harding, Inc.*, 127 Vt. 52, 54, 238 A.2d 646, 648 (1968). There was ample evidence in the record, in the form of Ms. Andrew's testimony, to support Finding No. 22. In the ab-

sence of evidentiary support for the assertion that CNA's representative made the representations allegedly relied upon by claimant, his estoppel claim must fail.

■ Furthermore, the Commissioner correctly concluded that 21 V.S.A. § 641(b) does not impose a duty on the employer or its insurer to develop a rehabilitation plan for a claimant. The statute clearly only contemplates that the parties will cooperate in the development and implementation of a plan. If such cooperation is not possible, then the Commissioner may be asked to refer the claimant, after evaluation, to appropriate treatment or services at the employer's expense. 21 V.S.A. § 641(b). The second certified question must therefore be answered in the negative.

## III.

■ The third certified question, regarding attorney fees, is disposed of by the plain language of the statute. 21 V.S.A. § 678(a) provides, in pertinent part: "The commissioner may allow the claimant to recover reasonable attorney fees *when he prevails*." (Emphasis added.) Since the claimant did not prevail in his claim, he is precluded from recovering attorney fees.

*Certified questions one and three are answered in the affirmative. Certified question two is answered in the negative.*