## Glenn Fleury v. Kessel/Duff Construction Co.

[533 A.2d 1197]

No. 85-387

Present: Allen, C.J., Dooley, J., and Barney, C.J. (Ret.), Hill, J. (Ret.)
and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed September 11, 1987

*Anthony B. Lamb*, *Michael I. Green*, and *John Lavoie*, Law
Clerk (On the Brief), of *Paul, Frank & Collins, Inc.*, Burlington,
for Plaintiff-Appellee.

*Miller, Norton & Cleary*, Rutland, for Defendant-Appellant.

**Dooley, J.** This is a workers' compensation appeal brought by
the employer. The Commissioner of Labor and Industry (Com-
missioner) awarded the claimant, Glenn Fleury, permanent total
disability benefits for 330 weeks beginning on April 6, 1982. The
injury giving rise to the award occurred on December 13, 1977. At
the time of the award, the claimant had already received tempo-

rary total disability compensation from December 14, 1977 to April 6, 1982.

The record before the Commissioner consisted of a stipulation of facts, a report of Doctor Dorothy Ford and a statement under oath from the same doctor. The evidence showed that claimant, while employed by the appellant Kessel/Duff Construction Company, was struck by a timber on the side of his head and fell 15 feet to the floor, landing on his left side. He sustained a skull fracture and brain stem injury resulting in problems with vision, decreased hearing, ringing in the ears and vertigo. He also sustained a fracture of the left clavicle and right rib, and has had neck and upper back pain along with mild lower facial weakness.

The injury has left claimant with numerous permanent and untreatable physical impairments. He has double vision and vertigo. He has a moderately severe hearing loss bilaterally and uses a hearing aid in one ear. An EEG showed dysfunction over the left temporal lobe.

The reporting doctor found five separate disabilities including organic brain syndrome, cervical motion restriction, and psychoneurosis anxiety reaction, and declared them at an end point as of March 29, 1982. She determined the extent of the impairment of the "whole man" from each injury and in combination. The sum of the individual impairments was seventy-five percent. By combining the values using a "combined values chart," she came up with a combined rating of fifty-seven percent.

In her statement under oath, Doctor Ford explained the individual disabilities and the methods used to calculate the percentage of impairment. She stated, however, that "[the claimant] is totally disabled for gainful employment," and detailed why the disabilities would prevent any employment. She emphasized that "this man's disability is because of a brain injury and has to be viewed as a sort of complex total injury . . . ."

Based on the medical evidence, the parties stipulated that "Glenn Fleury is totally disabled from future gainful employment, although not totally physically impaired."

The Commissioner found the claimant to be permanently totally disabled pursuant to 21 V.S.A. § 644. While that section does not specifically include impairments like those suffered by claimant within the list of injuries that are deemed to cause "total and permanent disability," the Commissioner noted that the list is not exclusive, and that claimant's impairment was the func-

tional equivalent of "incurable imbecility or insanity," which is specifically listed. He rejected the approach of adding the scheduled disabilities to come up with a percentage of partial disability.

The Commissioner also awarded a full 330 weeks of benefits for the permanent total disability without deducting any of the weeks for which temporary total disability benefits were paid. He indicated that this action was mandated by our decision in *Montgomery* v. *Brinver Corp.*, 142 Vt. 461, 457 A.2d 644 (1983).

The employer appeals on three grounds: the finding of functional equivalence with imbecility or insanity is not supported by the evidence; the finding of permanent total disability is not supported by the evidence; and the limit of total benefits (temporary and permanent) should be 330 weeks. We reject each claim of error and affirm.

It is helpful at the outset to put the issues in this appeal in context in the statutory scheme. Our law provides for two main types of benefits. Temporary benefits (for total or partial disability) are available during the recuperation period until the injured worker is as far restored as the permanent character of his injuries will permit. *Orvis* v. *Hutchins*, 123 Vt. 18, 24, 179 A.2d 470, 474 (1962). Thereafter, benefits are available for the permanent disability within the statutory limits. These benefits can be provided for a partial or total permanent disability. See *id.* at 22, 179 A.2d at 473.

The entitlement to permanent total disability benefits is governed by 21 V.S.A. § 644. That section lists certain injuries that are deemed to cause total disability. One of those is an injury to the skull that results in incurable imbecility or insanity. See 21 V.S.A. § 644(a)(6). The statute provides, in subsection (b), that the enumeration in subsection (a) is not exclusive. 21 V.S.A. § 644(b).

The entitlement to permanent partial disability benefits is governed by 21 V.S.A. § 648. It also lists injuries and assigns to each a benefit period corresponding to the percentage of impairment deemed to be caused by each injury. For impairments not specifically mentioned, "the commissioner shall determine the percentage of loss and award compensation accordingly." 21 V.S.A. § 648(20); see also 21 V.S.A. § 648(18) (for unlisted impairments, compensation must bear the same relation to a listed amount as the unlisted disability bears to the listed disability).

This Court carefully reviewed the statutory scheme in *Bishop v. Town of Barre*, 140 Vt. 564, 442 A.2d 50 (1982), to distinguish the grounds for benefits for temporary disability from those for benefits for permanent disability. The main issue in *Bishop* was the relevance of claimant-specific factors that bear on individual wage loss—e.g., age, education and experience. The Court held that these factors are relevant to benefits for temporary disability but not to permanent disability benefits. *Id.* at 571-74, 442 A.2d at 53-55. In short, "permanent disability benefits are calculated solely on the basis of physical impairment." *Id.* at 571, 442 A.2d at 53.

This Court has addressed the eligibility grounds for total disability benefits although the cases may be more appropriately seen as temporary disability cases. In *Roller* v. *Warren*, 98 Vt. 514, 129 A. 168 (1925), the Court thoroughly analyzed the tests used in England, as well as in other states. The Court approved a definition of total disability as a situation where an employee is so disabled that he is unable to do any work of any character, or is unable to resume his former work or to procure remunerative employment at a different occupation suited to his impaired capacity. *Id.* at 519, 129 A. at 170. In *Gee* v. *City of Burlington*, 120 Vt. 472, 144 A.2d 797 (1958), the Court affirmed an award of total disability benefits finding that the Commissioner could take into account the claimant's limited aptitude and his effort in seeking employment. *Id.* at 476-77, 144 A.2d at 799-800. Other courts have arrived at various definitions of total disability. One treatise summarizes the definition as "a physical defect that makes his labor unsalable in any market reasonably accessible to him," and amplifies as follows:

> Generally permanent total disability "means disablement of an employee to earn wages in the same kind of work, or work of a similar nature, that he was trained for, or accustomed to perform, or any other kind of work which a person of his mentality and attainments could do."

11 W. Schneider, Workmens Compensation Text § 2307, at 404 (1957) (citation omitted). Another treatise states that total disability may be found "if the claimant's physical condition is such as to disqualify him for regular employment in the labor market." 2 A. Larson, Workmen's Compensation Law § 57.00, at 10-1 (1986).

Although our decisions in *Roller* and *Gee* adopt disability definitions that are similar to those in other states, it may be that they are not good statements of the standard for *permanent* total disability benefits in the light of the analysis in *Bishop*. Both of these decisions state definitions that include claimant-specific factors like aptitude for work. We need not resolve this issue and adopt a general definition of permanent, total disability at this time. The fact is that the claimant in this case is totally disabled under any definition. The medical evidence is that he is totally disabled for gainful employment. That assessment was based on physical impairment, rather than individual employability factors like age or experience, and without regard to work available in the community. This evidence was more than ample to support the finding of the Commissioner that claimant is permanently, totally disabled.

We reach this conclusion without going through the reasoning adopted by the Commissioner and assailed by the appellant that the claimant's disability is the functional equivalent of incurable imbecility or insanity. While the decision in *Bishop* suggests that this reasoning is appropriate, 140 Vt. at 575, 442 A.2d at 55, we decline to require that the Commissioner analogize to a listed impairment in a case falling so clearly within the category of total disability. This is particularly so where the claimant's disability is the combined result of a number of specific impairments. See 2 A. Larson, Workmen's Compensation Law § 58.24, at 10-344.106 (1986). It is impossible to compare these multiple impairment cases to the statutory examples.

Our holding on this point addresses the first two issues raised by appellant. There remains only the question of the time limit on benefits.

The injury in this case occurred in December of 1977 and must be adjudicated under the law then in effect. For purposes of the issue of duration of benefits, the law at the time of this injury was identical to that considered in *Montgomery* v. *Brinver Corp.*, *supra.* As that decision reflects, the law was in a somewhat confused state. On the one hand, the Legislature had specifically eliminated any durational limits from temporary disability benefits. See 21 V.S.A. § 642(a) (as amended by 1971, No. 158 (Adj. Sess.), § 2). On the other hand, it had not eliminated durational limits on aggregate benefits (including both temporary and permanent disability benefits). See 21 V.S.A. § 601(17) (as added by

1967, No. 122, § 1) (defines limit of compensation as 330 weeks); 21 V.S.A. § 645 (as amended by 1967, No. 122, § 7) (the total amount payable in compensation on account of an accident to one person resulting in permanent total disability shall not exceed the limit of compensation); 21 V.S.A. § 643 (as amended by 1955, No. 227, § 3) (payments of temporary total disability benefits shall not continue longer than 330 weeks); 21 V.S.A. § 648(21) (as amended by 1963, No. 134, § 2) (temporary total disability benefits plus permanent partial disability benefits can not exceed 330 weeks).

In *Montgomery*, the employer had terminated temporary total disability benefits after 330 weeks on the basis of § 643 as then in effect. The Court found no such limit existed on temporary total disability benefits because of the controlling force of § 642(a) enacted later in time. Because the case involved only temporary disability payments, the Court did not "consider the law regarding permanent disability benefits." 142 Vt. at 464, 457 A.2d at 646.

This is a closer case than that presented in *Montgomery*. It is possible to reconcile the conflicting statutes here by applying the 330 week limit to the aggregate of all benefits. For two reasons, however, we believe the better policy is to apply the durational limit solely to permanent disability benefits.

 The first reason is that the temporary and permanent disability awards are intended for different purposes. In *Orvis* v. *Hutchins, supra,* the employer argued that a permanent partial disability award calculated in accordance with the schedule in 21 V.S.A. § 648 should be reduced by the temporary disability award. The Court found that the purpose of the temporary disability award is to compensate for "the immediate or present loss of wages during the period of physical recovery, whether such recovery be complete or partial." *Orvis*, 123 Vt. at 22, 179 A.2d at 473 (citing *Roller* v. *Warren*, 98 Vt. at 519, 129 A. at 170). It found a different purpose for permanent disability benefits: "The award for permanent incapacity looks to the future to compensate for the probable reduction in earning power that will attend the employee for the remainder of his working life." *Id.* It rejected the employer's argument in part because the result urged for by the employer would confuse the different objectives that underlie the statute. *Id.* at 22-23, 179 A.2d at 473.

The employer's argument here would lead to the result rejected in *Orvis*. A claimant with a longer healing period would receive

less benefits for the permanent loss of earning power than one with a shorter healing period. We recognize that this is the inevitable result of combining both the temporary and permanent award under a common durational maximum—a result clearly commanded in the past in this state—but decline to continue the situation longer than made necessary by the clear command of the Legislature.

The second reason is that the employer's interpretation would require us to give less than full effect to the Legislature's amendment to § 642(a), despite the fact that it was the last pronouncement relevant to the issue. The wording is that the "limit of compensation shall not apply" to the award of temporary disability benefits. 21 V.S.A. § 642(a) (as amended by 1971, No. 158 (Adj. Sess.), § 2). We would be "applying" the limit if we held that the receipt of temporary disability benefits should be credited against the amount of permanent total disability benefits a claimant can receive.

Accordingly, we hold that the durational payment limit of 330 weeks applies only to the permanent total disability benefits and affirm the Commissioner on this point.

*Affirmed.*