### Joan Wentworth v. Crawford and Company

[807 A.2d 351]

No. 01-089

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed May 24, 2002
Motion for Reargument Denied July 26, 2002

120

*Thomas C. Nuovo* of *Bauer, Anderson & Gravel*, Burlington, for Plaintiff-Appellant.

*James E. Preston* of *Pierson, Wadhams, Quinn & Yates*, Burlington, for Defendant-Appellee.

**Amestoy, C.J.** Plaintiff Joan Wentworth appeals the trial court's dismissal of her negligence complaint against defendant Crawford & Company, a firm Wentworth's employer hired to provide her with vocational rehabilitation benefits after a workplace injury. The trial court dismissed Wentworth's complaint pursuant to V.R.C.P. 12(b)(6) because it determined that the Workers' Compensation Act provided the exclusive remedy for harm flowing from her workplace injury. We affirm, although on different grounds. See *Sorge v. State*, 171 Vt. 171, 174 n.*, 762 A.2d 816, 818 n.* (2000) (Supreme Court may affirm correct result below for different reasons on appeal).

Motions to dismiss for lack of a cognizable legal claim are not favored and are rarely granted. *Ass'n of Haystack Prop. Owners, Inc. v. Sprague*, 145 Vt. 443, 446-47, 494 A.2d 122, 124 (1985). Dismissal is

inappropriate unless there is no doubt that the plaintiff could prove no facts or circumstances entitling her to relief. *Id.* The motion tests whether the complaint adequately states a claim; thus, the court must restrict its inquiry to the facts alleged in the complaint. See *Bennett Estate v. Travelers Ins. Co.*, 138 Vt. 189, 190-91, 413 A.2d 1208, 1209 (1980); see also *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (when deciding a motion under F.R.C.P. 12(b)(6), the court must limit its consideration to facts stated in the complaint, attachments thereto, or to matters the court may judicially notice); 5A C. Wright & A. Miller, Federal Practice & Procedure § 1356, at 298 (1990) (a Rule 12(b)(6) motion tests only whether the plaintiff has adequately stated a claim and court's inquiry must be limited to complaint's contents). We regard as true the complaint's well-pleaded factual allegations when reviewing an order on a motion under V.R.C.P. 12(b)(6). *Sprague*, 145 Vt. at 444, 494 A.2d at 123.

In this case, Wentworth's complaint alleged that she was employed by Fanny Allen Hospital as a licensed practical nurse for over twenty years.[1] In October 1992, she injured her back. She returned to work in the fall of 1993, but reinjured her back that November while attempting to move a deceased patient. The following month, defendant Crawford & Company, who was hired to provide Wentworth with vocational rehabilitation benefits pursuant to the Workers' Compensation Act, see 21 V.S.A. § 641(a) (Cum. Supp. 2001), made an initial evaluation of Wentworth, including her physical limitations. Crawford determined that Wentworth's limitations prevented her from returning to her former position at Fanny Allen. She was directed to stay in touch with the hospital to determine what other jobs might be available to her.

Although Crawford completed its initial evaluation of Wentworth, it did not prepare a written report detailing an appropriate vocational rehabilitation plan for her. From December 1993 to January 1999, Crawford contacted Fanny Allen on one occasion only to ascertain the availability of suitable alternative employment for Wentworth, and did not inform Wentworth of her rights to reinstatement at Fanny Allen under 21 V.S.A. § 643b. Fanny Allen had a unit secretary position

---

[1] This is the second lawsuit Wentworth has filed in connection with circumstances related to her employment and injury at Fanny Allen, now Fletcher Allen Health Care, Inc. In *Wentworth v. Fletcher Allen Health Care*, 171 Vt. 614, 765 A.2d 456 (2000) (mem.), we affirmed the trial court's dismissal of Wentworth's suit against the hospital for retaliation, breach of contract, and emotional distress after the hospital terminated her employment following her back injury.

available which Wentworth could have performed after minimal training. Wentworth sought employment elsewhere, however, and further injured her back.

In December 1999, Wentworth filed her complaint against Crawford in Chittenden Superior Court. She alleged that the workers' compensation rules required Crawford to prepare an individual written rehabilitation plan, but it failed to do so. She claimed Crawford also failed to inform her of her rights to reinstatement with Fanny Allen. The complaint alleged that Crawford owed Wentworth a duty to "uphold the law and provide competent rehabilitation services to her," and it breached that duty by failing to assist her in obtaining employment and by violating the workers' compensation rules promulgated by the Vermont Department of Labor and Industry. Consequently, Wentworth alleged, she suffered economic harm in the form of lost wages and benefits. The complaint did not allege that Crawford's conduct caused Wentworth any physical injury.

Crawford moved to dismiss the complaint for failure to state a cause of action under V.R.C.P. 12(b)(6). The court granted the motion on the grounds that Wentworth's complaint did not allege a cognizable claim outside the exclusivity provision of the Workers' Compensation Act. See 21 V.S.A. § 622. It reasoned that Crawford was hired by her employer after her compensable back injury, and therefore Wentworth's remedies lie exclusively under the Act pursuant to 21 V.S.A. § 622. Unless Wentworth could show that Crawford undertook a duty outside and independent of the Act, and that she suffered additional physical injuries flowing from Crawford's breach of that duty, her claim fell within § 622 and dismissal was required. Although we analyze Wentworth's claim differently than did the trial court, we agree that dismissal of her complaint was proper.

Wentworth's brief, like her complaint, demonstrates that her primary grievance was Crawford's alleged failure to abide by the Department's vocational rehabilitation rules. She argues that the rules required Crawford to prepare and have her sign a written rehabilitation plan so that she could obtain suitable employment with Fanny Allen. She also claims that Crawford was required to provide training and to pursue alternative employment for her at the hospital, as well as preserve her reinstatement rights. Crawford disputes those allegations, and argues that she should have pursued and exhausted available administrative remedies with the Department of Labor and Industry to address her dissatisfaction with Crawford's services. Under the exhaustion doctrine one must generally pursue available

administrative remedies prior to filing a civil complaint. See *In re D.A. Assocs.*, 150 Vt. 18, 20, 547 A.2d 1325, 1326 (1988) ("[W]hen an administrative remedy is established by statute or regulation, relief must not only be sought in accordance therewith, but must first be exhausted before recourse to the courts is available."). A review of the statutory and regulatory scheme persuades us that Crawford's exhaustion-of-remedies argument has merit.

Vocational rehabilitation benefits are available when a workplace injury prevents the employee from performing work for which she had previous training or experience. 21 V.S.A. § 641(a). The benefits include retraining and job placement, and their purpose is "to restore the employee to suitable employment." *Id.* The statute does not "impose a duty on the employer or its insurer to develop a rehabilitation plan for [an injured employee]," but, rather, it "contemplates that the parties will cooperate in the development and implementation of a plan." *Wroten v. Lamphere*, 147 Vt. 606, 612, 523 A.2d 1236, 1239 (1987). The rules the Commissioner of the Department of Labor and Industry promulgated in 1994[2] required the vocational rehabilitation service provider to file an "Individual Written Rehabilitation Plan" (IWRP), "[w]here appropriate," after assessing the injured worker's eligibility for vocational rehabilitation services. Vt. Workers' Compensation & Occupational Disease Act Rule 29 (eff. Feb. 7, 1994). The rules defined an IWRP as a "written document completed by a rehabilitation service provider and an injured worker which describes the manner and means by which the injured worker will be returned to suitable employment through the use of rehabilitation services." Rule 26(b). The IWRP's purpose was "to document not only the vocational goal(s) agreed upon but also each party's responsibilities in achieving the goal(s)." *Id.*

The Department's rules also required the injured worker, the employer or its insurance carrier, and the rehabilitation service provider to sign the IWRP. Rule 29(d). The Commissioner would approve the IWRP if the Commissioner determined that the vocational goal, and the plan established to meet that goal, were appropriate.

---

[2] The earliest set of rules available to this Court became effective on February 7, 1994. The relevant portions were amended on April 1, 1995. Additional amendments were promulgated after Wentworth filed her complaint. Because Wentworth's alleged injury arose sometime between December 1993 and December 1999 when she initiated this action in superior court, our analysis focuses on the rules effective February 7, 1994 — April 1, 1995, and April 1, 1995 — August 15, 2000. All citations are to the 1994 rules unless otherwise indicated. The current rules can be found at 3 Code of Vt. Rules 24 010 003-1 to 24 010 003-28 (2002).

Rule 29(e). If any party to the plan did not sign the IWRP, or if the Commissioner had "reason to doubt" the plan's appropriateness, the rules authorized the Department to convene an informal conference or a formal hearing to resolve the matter. Rule 29(e). Most importantly, Rule 32 authorized the Commissioner to order a change in rehabilitation service provider "upon a showing that the current provider is not complying with the spirit and/or letter of [the] rules," is not qualified under standards set forth in rules, and/or is not able to engage in an effective working relationship with the injured employee as a result of irreconcilable differences between the two parties. Rule 32. The rule's obvious purpose was to ensure that a claimant entitled to vocational rehabilitation benefits obtained effective and competent service from the provider. Rule 32 also furthered the Legislature's directive that the Commissioner of the Department of Labor and Industry be the primary authority for determining questions arising under the Workers' Compensation Act. See 21 V.S.A. § 606; *DeGray v. Miller Bros. Constr. Co.*, 106 Vt. 259, 268, 173 A. 556, 559 (1934). Wentworth should have sought to remedy Crawford's alleged failures through the relief available under Rule 32.

■Wentworth argues that exhaustion was not required for two reasons. She first claims that the Department's rules did not allow her to request a change in service provider until sometime in 2000. That claim is without support because, since at least 1994, the rules have authorized the Commissioner to order a change in service provider upon a showing that the provider is not complying with the rules.[3] Wentworth also argues that the Department of Labor and Industry is not authorized to adjudicate a claim for economic losses due to a vocational rehabilitation service provider's malpractice, and therefore no administrative remedy for her complaint was available. That argument entirely misses the point of the exhaustion requirement in cases such as this one. One salutary effect of the requirement is its potential to mitigate or eliminate a plaintiff's damages. *Westlake Cmty. Hosp. v. Superior Ct.*, 551 P.2d 410, 416 (Cal. 1976); *Long v. Samson*, 568 N.W.2d 602, 605 (N.D. 1997). Had Wentworth timely availed herself of the regulatory remedy under Rule 32, she may have avoided her alleged injury and consequent damages altogether. Moreover, by

---

[3] In 1995, the Department further clarified the rule by directing that change-of-provider requests be filed with the Commissioner. See Rule 33 (eff. Apr. 1, 1995). The 1995 clarification did not, however, create a new substantive right that did not exist previously as Wentworth's argument implies.

bringing Crawford's alleged deficiencies to the Department's attention under Rule 32, Wentworth may have gained an understanding of her own responsibilities under the vocational rehabilitation regulations as well as Crawford's obligations. The trial court's dismissal was therefore appropriate because Wentworth did not first pursue and exhaust the administrative remedies the Department designed to redress any problems associated with Crawford's provision of vocational rehabilitation services.

By requiring Wentworth to pursue the remedies available under the Department's workers' compensation rules, we are not suggesting that the exclusivity provision of the Workers' Compensation Act barred her claim as Crawford argues, and as the trial court concluded. See 21 V.S.A. § 622. Section 622 limits a worker's rights and remedies for a workplace injury to those provided in the workers' compensation statutes. *Id.* § 622. The Act's provisions apply to accidental personal injuries that arise out of employment and occur during its course. *Id.* § 618(a)(1); *Miller v. IBM Corp.*, 161 Vt. 213, 214, 637 A.2d 1072, 1072-73 (1993). The Act does not define "personal injury" other than stating that the term includes death resulting from an injury, occupational diseases, and "injury to and cost of acquiring and replacement of prosthetic devices, hearing aids and eye glasses." 21 V.S.A. § 601(7). Nevertheless, the statutory scheme evidences the Legislature's intent to compensate employees for bodily or mental injuries, not economic injuries alone. See, e.g., 21 V.S.A. § 640 (obligating employer to provide reasonable medical services, including surgery and nursing services); *id.* § 642 (temporary total disability benefits); *id.* § 644 (setting forth nonexhaustive list of permanent total disabilities like loss of hands, permanent loss of sight in both eyes, and loss of both feet); *id.* § 645 (compensation payments for permanent total disability); *id.* § 648 (setting forth method for computing compensation for permanent partial impairments); see also 3 A. Larson, Larson's Workers' Compensation Laws ch. 55, at 55-1 (2001) ("Personal injury" includes any adverse change in the body, including disease and traumatic neurosis); Black's Law Dictionary 541 (6th abr. ed. 1991) (in workers' compensation acts, "personal injury" means harm or damage to employee's health). In addition, the injury must arise out of or during the course of the injured worker's employment. *Miller*, 161 Vt. at 214, 637 A.2d at 1072-73.

In this case, Wentworth alleged an economic injury wholly separate from, and subsequent to, the physical back injury for which she received workers' compensation payments and vocational

rehabilitation benefits. The facts set forth in her complaint allege that the economic injury occurred during her rehabilitation and resulted from the vocational rehabilitation specialist's failure to fulfill its obligation to provide plaintiff with training and job placement services. Because Wentworth alleged a purely economic injury subsequent to her compensable back injury which did not arise out, or during the course, of her employment with Fanny Allen, § 622 does not apply to her claim because her injury was not compensable under the Act. Cf. *Demag v. American Ins. Cos.*, 146 Vt. 608, 611, 508 A.2d 697, 698-99 (1986) (deceased employee's wife's claim against workers' compensation insurance carrier for emotional distress did not arise out of husband's employment but stemmed from her status as a claimant seeking compensation after husband's death; therefore claim was not barred by exclusivity provision of the Act); *Stump v. Commercial Union*, 601 N.E.2d 327, 330-31 (Ind. 1992) (claims against a workers' compensation carrier for employee injuries which do not occur by accident, or arise out of and during course of employment, may be pursued in court).

█Although § 622 does not prohibit Wentworth's claim against Crawford, dismissal was also proper because Wentworth's complaint does not allege facts sufficient to find that Crawford owed her any actionable duty to prevent her economic losses. It is well established in Vermont that absent some accompanying physical harm, there is no duty to exercise reasonable care to protect another's economic interests. *O'Connell v. Killington, Ltd.*, 164 Vt. 73, 77, 665 A.2d 39, 42 (1995); see also *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 315, 779 A.2d 67, 71 (2001) (economic loss doctrine bars recovery of damages for harm other than physical harm to persons or property under negligence principles); *Gus' Catering, Inc. v. Menusoft Sys.*, 171 Vt. 556, 558, 762 A.2d 804, 807 (2000) (mem.) (absent accompanying physical harm, no duty to avoid intangible economic losses to another exists under negligence law). Without a legal duty of care, an action for negligence cannot stand. *Gus' Catering, Inc.*, 171 Vt. at 559, 762 A.2d at 808. Whether a duty exists in particular circumstances is a legal question for the court's consideration. *Sorge*, 171 Vt. at 174, 762 A.2d at 818.

█In her appellate briefs, Wentworth argues that Crawford's duty to her arose from its contract, the requirements of the trade, and statute; however, neither the brief nor the complaint set forth any facts supporting the existence of a contractual duty. Even if the facts

in Wentworth's complaint established the existence of a contract, our caselaw prohibits a claimant from seeking damages for contractual losses through tort law. *Springfield Hydroelectric*, 172 Vt. at 314-15, 779 A.2d at 70-71. "The underlying analysis turns on whether there is 'a duty of care *independent* of any contractual obligations.'" *Id.* at 316, 779 A.2d at 71 (quoting *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269 (Colo. 2000)) (emphasis in original). Wentworth fails to show, however, that Crawford owed her any independent duty to protect her economic interests.

Although Wentworth argues that the requirements of Crawford's trade also give rise to a legal duty by Crawford to protect her economic interests, the complaint is devoid of any facts supporting the existence of such duty. Neither Wentworth's complaint nor her brief allege that Crawford held itself out as a provider of a licensed professional service requiring a professional rather than ordinary standard of care. See *Springfield Hydroelectric*, 172 Vt. at 317, 779 A.2d at 72 (noting that professional malpractice claim must be predicated on licensed professional service requiring professional rather than ordinary standard of care). Nor did her complaint or brief identify any professional standards to which entities like Crawford must adhere in the provision of vocational rehabilitation services. Instead, Wentworth relies on the requirements she alleges the Workers' Compensation Act and implementing regulations establish for vocational rehabilitation service providers.

Wentworth alleges that Crawford owed her a duty under the Department's rules to prepare, and have her sign, an IWRP to help her procure suitable employment with Fanny Allen. Wentworth also alleges that the rules required Crawford to pursue employment opportunities for her at the hospital, preserve her right to reinstatement with the hospital, and provide her with training for an open position there. We find no support for Wentworth's allegations.

Neither § 641(a) nor the Department's implementing regulations place sole responsibility for preparing an IWRP on the vocational rehabilitation service provider. As we explained previously, an IWRP is a collaborative document prepared by the service provider and the injured worker. One chief purpose of the IWRP is to set forth each party's obligations towards attaining the identified rehabilitation goal to place the worker in suitable employment. The statutory and regulatory scheme therefore do not support imposing a legal duty on

Crawford to protect Wentworth's economic interests through preparation of an IWRP.

■ Wentworth's assertions that Crawford owed her a duty under the Act to pursue employment opportunities on her behalf, preserve her reinstatement rights, and provide her with training are similarly insufficient as a matter of law to find that Crawford owed Wentworth a legal duty to sustain an action in negligence. We find nothing in the relevant statutes or the Department's rules requiring a vocational rehabilitation service provider to "pursue employment opportunities" for Wentworth or preserve her right to reinstatement. Indeed, Wentworth's complaint alleges facts to the contrary. It states that Crawford's initial assessment noted that Wentworth "should stay in touch with Fanny Allen Hospital to determine what other jobs might be available to her."

■ Similarly, the relevant statutes and regulations do not support Wentworth's contention that Crawford had a legal obligation to provide her with training. Training may or may not be required to obtain suitable employment for an injured worker; whether training is necessary depends on the rehabilitation goal the employee identifies through cooperation with the service provider. Rule 26(b); Rule 29(b). Where no such goal has been identified and agreed to, the responsibilities for pursuing employment opportunities and the methods for obtaining suitable employment remain undefined. Consequently, there are no set of facts and circumstances alleged in the complaint from which we could say that, if proved, would entitle Wentworth to relief. See *Sprague*, 145 Vt. at 446, 494 A.2d at 125. The trial court therefore did not err by dismissing Wentworth's complaint under V.R.C.P. 12(b)(6).

*Affirmed.*