## Association of Haystack Property Owners, Inc., Henry J. & Shirley Banach, et al. v. Peter Sprague and Herbert Hart, J. Gordon Phillips, Sheldon T. James, Jr., and W. Thompson Cullen

[494 A.2d 122]

No. 83-222

Present: Hill, Underwood, Peck and Gibson, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed March 22, 1985

Motion for Reargument Denied April 18, 1985

444

R. *Bruce Freeman*, Wilmington, for Plaintiffs-Appellants.

*Manchester & O'Neill*, Burlington, for Defendant-Appellee Sprague.

*Robert B. Hemley* and *Norman Williams* of *Gravel, Shea & Wright, Ltd.*, Burlington, for Defendant-Appellee Hart.

**Peck, J.** This is an appeal by plaintiffs in a certified class action from an order of the Windham Superior Court granting defendants' motion to dismiss plaintiffs' amended complaint[1] for failure to state a claim upon which relief may be granted. V.R.C.P. 12(b)(6). We agree with the plaintiffs that, in this case, it was error to dismiss plaintiffs' claim on the pleadings; accordingly, we reverse.

In reviewing the lower court's action we must assume the factual allegations in plaintiffs' complaint are true. *Jones* v. *Keogh*, 137 Vt. 562, 563, 409 A.2d 581, 582 (1979). Even as disclosed by the pleadings however, the facts here are mazelike and intricate. They emerged over a long period of time, reach-

---

[1] Plaintiffs' *original* complaint included allegations not in their amended complaint. Nevertheless, plaintiffs advised the court that their amended complaint constituted their *entire* complaint.

ing back approximately twenty years. Nevertheless, for purposes of an understanding of this opinion, it is necessary to summarize here only some of the more salient factual allegations.

In the mid-1960's defendant Hart formed Haystack Mountain Ski Area, Inc. and served with defendant Sprague as a director of this corporation and its successor, Haystack Corporation, until about 1974. For convenience, we will refer to both corporations as "Haystack."

Haystack had land holdings in Wilmington, Vermont, including the so-called "Ski area." In the late 1960's the corporation encountered financial difficulties, but was able to obtain a $1.2 million loan from a credit corporation. The corporation pledged certain lands held by it as part of the collateral for the loan; however, the principal collateral was marketable securities owned by Hart personally and by his father. When Haystack found itself unable to pay the debt service, defendant Hart formulated a plan to pay off the loan. The plan involved the purchase of significant additional acreage in Wilmington and the development of a major second-home community at the ski area to be marketed interstate. Subsequently, Hart did purchase additional land which he then sold to the corporation. It appears further that additional funds for development were obtained from a lender-mortgagee.

Pursuant to the marketing phase of the plan, unimproved lots were sold to members of the plaintiff class. It appears that Haystack eventually paid off the loan from the credit corporation, using part of the purchase money received from the plaintiffs. Although certain roads and other "amenities" were promised, the deeds and contracts restricted any building on the lots sold until Haystack provided water and sewer services. According to the complaint, plaintiffs paid their purchase money to the corporation, "to be managed for their benefit." It was alleged further that by approving the plan, and by receiving the benefit of the payments made to them, defendants Hart and Sprague, as directors of Haystack, became fiduciaries to the plaintiffs. The complaint alleged further that the payments to the sales staff were exorbitant, with inadequate funds used for development.

In 1973, Hart and Sprague resigned as directors of Haystack. Plaintiffs alleged that their resignation "may have" been

submitted in bad faith, knowing that the financial collapse of the corporation was imminent; on September 14, 1974, the corporation did in fact collapse. At that time, no water, sewer services, roads, or certain other "amenities" had yet been installed.

The complaint also alleged that subsequent to his resignation as a director, Hart foreclosed on mortgages he had taken from Haystack when he sold land to it, thereby obtaining title to these lands which he resold at a profit. As late as 1980, Sprague sold lots he owned to the lender-mortgagee, also realizing a profit from the sale.

Plaintiffs alleged that defendants' mismanagement of Haystack "stemming from the bad faith development plan" and from their later action amounted to a breach of fiduciary duty owed plaintiffs. Further, it was alleged that the resignation of Hart and Sprague did not terminate their fiduciary duty to the plaintiff class.

Finally, plaintiffs claimed the breach of the fiduciary duty, owed them by defendants, caused a loss in the value of their properties. They asked for judgment against defendants jointly and severally, demanding compensation for their loss and "a return of the benefit wrongfully obtained by defendant Hart"— the amount used to pay off the loan in 1972. Assuming the validity of the pleadings, Hart did realize a benefit personal to him; the stock he pledged as security was, presumably, no longer encumbered.

■ A court should not dismiss a cause of action for failure to state a claim upon which relief may be granted "unless it appears beyond doubt that there exist no circumstances or facts which the plaintiff could prove about the claim made in his complaint which would entitle him to relief." *Levinsky* v. *Diamond*, 140 Vt. 595, 600–01, 442 A.2d 1277, 1280–81 (1982).

Plaintiffs have alleged that defendants, as directors of a corporation, owed members of the plaintiff class a fiduciary duty, that defendants breached that duty, and that plaintiffs were entitled to a judgment for damages they suffered as a result of that breach. By dismissing the complaint, the court in effect ruled that, *beyond doubt*, there were *no* circumstances or facts which plaintiffs could prove which would entitle them to relief.

■ A motion to dismiss for failure to state a claim is

not favored and rarely granted. 5 Wright & Miller, Federal Practice and Procedure § 1357, at 598 (1969). Moreover, courts should be especially reluctant to dismiss on the basis of pleadings when the asserted theory of liability is novel or extreme. *Shull* v. *Pilot Life Insurance Co.*, 313 F.2d 445, 447 (5th Cir. 1963); *Sherman* v. *St. Barnabas Hospital*, 535 F. Supp. 564, 572 (S.D.N.Y. 1982); *Dart Drug Corp.* v. *Corning Glass Works*, 480 F. Supp. 1091, 1098–99 n.10 (D. Md. 1979); *Roberts* v. *Meeks*, 397 So. 2d 111, 114 (Ala. 1981); *Lavoie* v. *Aetna Life & Casualty Co.*, 374 So. 2d 310, 311 (Ala. 1979); *Watling, Lerchen & Co.* v. *Ormond*, 86 Mich. App. 238, 244, 272 N.W.2d 614, 617 (1978); 5 Wright & Miller, *supra*, § 1357, at 603. The legal theory of a case should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations.

In *Shull* v. *Pilot Life Insurance Co., supra*, the United States Court of Appeals for the Fifth Circuit wrote:

> It is perhaps ironic that the more extreme or even farfetched is the asserted theory of liability, the more important it is that the conceptual legal theories be explored and assayed in the light of actual facts, not a pleader's supposition.

*Id.* at 447. In another federal case a hospital employee brought an action against his employer and union for discharging him allegedly in retaliation for the employee's refusal to agree to the union's preferential hiring demands. The United States District Court refused to dismiss the plaintiff's novel claim of "abusive discharge," conceding that no case had gone that far but concluding that "it would be imprudent at the pleading stage to dismiss categorically the possibility" of abusive discharge. *Sherman, supra*, at 571. The Alabama Supreme Court also wrote of its reluctance to allow the dismissal of novel or extreme theories of liability when it overturned a dismissal of a claim by which it was alleged that an insurer was liable for committing the tort of "outrage" when it refused to pay legitimate benefits due under a policy. *Lavoie* v. *Aetna Life & Casualty Co., supra*, 374 So. 2d at 311.[2]

---

[2] In the instant case, defendants wrote in their brief: "[P]laintiffs . . . ask this court to boldly go where no court has gone before."

In the case before us, plaintiffs' cause of action depends on the establishment of a fiduciary duty owed the plaintiff class by the defendant corporate directors. We cannot say that plaintiffs could not prove any facts that would entitle them to relief. It is true, as the lower court pointed out, that while corporate directors do owe fiduciary duties, the duties are not owed to the world at large. Also it may be generally true that those duties are owed to the corporation and to its stockholders but *not* creditors of the corporations. Nevertheless, some courts have held that corporate directors do owe a fiduciary duty to creditors, *Baldwin* v. *Wolff*, 82 Conn. 559, 74 A. 948 (1909) ; *Veeser* v. *Robinson Hotel Co.*, 275 Mich. 133, 266 N.W. 54 (1936), particularly when the corporation becomes insolvent, *Francis.* v. *United Jersey Bank*, 87 N.J. 15, 36, 432 A.2d 814, 824 (1981) ; *Whitfield* v. *Kern*, 122 N.J. Eq. 332, 341–42, 192 A. 48, 53–54 (1937) ; 19 C.J.S. *Corporations* § 837.

■ This Court has held that the "dealings between a majority stockholder and director and the corporation he controls . . . are subject to close scrutiny at the instance of persons having an interested relationship to the operation, such as a stockholder." *Lash* v. *Lash Furniture Co. of Barre, Inc.*, 130 Vt. 517, 522, 296 A.2d 207, 211 (1972). This language suggests that parties other than stockholders, *may*, under certain circumstances, also subject corporate director's dealings to close scrutiny. Again, however remote the possibility or novel the claim may be, we cannot say as a matter of law at this point that there is no possibility that plaintiffs could present sufficient evidence to establish a fiduciary duty and a breach thereof; a dismissal based on V.R.C.P. 12(b)(6) was at least premature in this case.

Further, the court below held the allegation that plaintiffs had paid the purchase money to Haystack to be managed for their benefit was a legal conclusion as to the effect of the payment, not an allegation of fact. We need not decide the merits of this holding; it may be correct. Nevertheless, even assuming the allegation is a conclusion of law only, the court's ruling had the effect of depriving plaintiffs of the opportunity to present evidence at trial which might require an ultimate conclusion in their favor.

Reiterating that dismissals on the pleadings are not favored, particularly when, as here, the plaintiffs' legal theory is novel,

we hold that the court should have denied the motion to dismiss and permitted the cause to proceed to trial.

*Reversed and remanded.*