496 So.2d 478 (1986)
Donald F. BROWN
v.
DSI TRANSPORTS, INC., and National Union Fire Insurance Company.
No. 85 CA 0744.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
Writ Denied December 12, 1986.
*479 Robert L. Kleinpeter, Baton Rouge, for Donald F. Brown.
Wayne T. McGaw, New Orleans, for Kaiser Aluminum & Chemical Corp.
*480 Carolyn Pratt Perry, Baton Rouge, for DSI Transport, Inc. & Nat. Union Fire Ins. Co.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
This case arose from an accident which occurred in Atmore, Alabama, on October 26, 1981. Donald F. Brown (plaintiff) was injured when the rear wheels of a tractor trailer rolled over him and fractured his hip. He brought suit against the driver's employer, DSI Transports, Inc. (DSI), and its insurer, National Union Fire Insurance Company (National Union). Kaiser Aluminum and Chemical Corporation (Kaiser), plaintiff's employer, intervened seeking reimbursement for worker's compensation payments it had made to him. The trial court granted judgment for plaintiff and Kaiser; all parties have appealed.
Kaiser had an agreement to supply alumina to an Exxon plant in Atmore. DSI was to transport the alumina by truck to Atmore from the Kaiser facility in Baton Rouge. Kaiser sent plaintiff to Atmore to make a record of the delivery and to see that it was properly completed. Immediately prior to the accident, plaintiff was recording the times and quantities of deliveries made to a reactor at the Atmore plant. Ledell Haynes, a DSI employee, had driven a DSI truck from Baton Rouge to Atmore. After unloading the alumina into the reactor, he drove his tractor-trailer a short distance from the reactor. Because another truck was blocking the exit gate, Haynes began backing his truck. He did not see plaintiff standing near the reactor, nor did plaintiff notice the truck approaching him from the direction of the exit gate. The trailer struck plaintiff; he fell and the rear wheels rolled over him, causing a severely comminuted fracture of his hip.
Plaintiff had surgery in Atmore shortly thereafter; a Smith-Peterson nail was used to repair the fracture. When he returned to Baton Rouge, he consulted Dr. John F. Loupe who advised him that the first procedure had not proved successful. Dr. Loupe performed a second operation and removed the Smith-Peterson nail, replacing it with a plate and screw. Plaintiff continued under Dr. Loupe's care through the time of the trial.
The trial judge assessed plaintiff's damages at $558,704.70, but because he found plaintiff 10% contributorily negligent, he reduced the award to $502,834.23, representing the 90% negligence ascribable to DSI. All parties stipulated that Kaiser had made $42,510.20 in worker's compensation payments to plaintiff, and the judge awarded this amount to Kaiser to be paid from the award to plaintiff.
CONFLICT OF LAWS
DSI and National Union present three issues for review: (1) Did the trial court err in applying Louisiana's law of comparative negligence instead of Alabama's law of contributory negligence? (2) Did the trial court err in finding that plaintiff was totally and permanently disabled? (3) Did the trial court err in awarding $200,000.00 in general damages. The latter two are alternative arguments, for the primary contention of the defendants is that Alabama law is the law of this case and that the rule in Alabama at the time of this accident was that contributory negligence is a complete bar to recovery.
Plaintiff's argument requires a two-part analysis. We must decide first what law will govern the question of whether any parties acted negligently and, second, what law should be used to determine the effect of contributory negligence on recovery.
Defendants argue that, because of Alabama's overriding interest in regulating the conduct of persons within the State, the Alabama rule of contributory negligence should apply. This confuses the two separate issues. We recognize Alabama's strong interest in regulating the activities of drivers and pedestrians within its borders. But we see no conflict between the Louisiana and the Alabama standards of negligence; both states impose a duty of reasonable care under the circumstances. More precisely, both recognize that a pedestrian *481 plaintiff can be contributorily negligent if he deviates from this standard. Nelms v. Allied Mills, Co., 387 So.2d 152 (Ala.1980); Turner v. New Orleans Public Service, Inc., 471 So.2d 709 (La.1985).
Thus, we are not confronted with a conflict of laws when resolving the first question: whether defendant or plaintiff acted negligently.[1] The trial court found that Haynes was 90% negligent. His failure to take adequate care when backing is well established. Plaintiff was aware that he was in a construction area where there was significant vehicular traffic. He testified that the truck had moved forward about 100 to 150 feet before it began to move backward. One witness testified that he saw the impending accident and began blowing his horn and waving at plaintiff, but to no avail. Our reading of the entire record does not indicate that the court was clearly wrong in ascribing 10% negligence to plaintiff and 90% to Haynes.[2]
The second part of this analysis presents a true conflict-of-laws issue: should Alabama's contributory negligence rule or Louisiana's comparative negligence rule be applied? Since we uphold the finding that plaintiff was negligent, application of Alabama's law would prevent his recovery; Louisiana law, the choice of the trial court, would simply reduce his award.
Louisiana has rejected the traditional rule of lex loci delicti. In Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973), instead of deciding that the law of the state in which the tort occurred would apply, the court concluded that an interest analysis was the more appropriate method of choosing which law applied. Jagers presented a false conflict of laws in that only one state (Louisiana) had an interest in the application of its laws. Cases following Jagers have adopted an interest analysis when faced with a genuine conflict of laws. Burns v. Holiday Travel, Inc., 459 So.2d 666 (La.App. 4th Cir.1984); Lee v. Ford Motor Company, 457 So.2d 193 (La. App. 2d Cir.1984), writ denied, 461 So.2d 319 (La.1984); Champion v. Panel Era Manufacturing Company, 410 So.2d 1230 (La. App. 3rd Cir.1982), writ denied, 414 So.2d 389 (La.1982). The threshold inquiry is whether at least two states have an interest in the matter; if so, the court must undertake an interest analysis to determine which state has the more significant relationship to the occurrence and the parties. Lee, 457 So.2d at 194-5.
The Restatement (Second) of Conflict of Laws (1969) (hereafter Restatement) has been used as the guide in resolving choice-of-law questions. Jagers, 276 So.2d at 312; Burns, 459 So.2d at 668. See also Brinkley & West, Inc. v. Foremost Insurance Company, 499 F.2d 928 (5th Cir.1974). The Restatement sets out these guidelines for tort cases:
§ 145. The General Principle
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
*482 In the case before us, both states have an interest in the application of their law. Compare Jagers, 276 So.2d at 311 312. The accident and injury occurred in Alabama. DSI, Kaiser, and plaintiff were conducting business there. The relation between the parties took place at least in part in Alabama.
On the other hand, Louisiana is the domicile of the plaintiff; DSI is incorporated in Texas and has a place of business in Louisiana. Nothing in the record indicates where the agreement between Kaiser and DSI was completed, but it is clear that both have places of business in Louisiana, that Haynes' DSI truck was loaded in Baton Rouge, that his trip originated there, and that Haynes was a resident of Baton Rouge.[3] From the information we have before us, the relationship between plaintiff and DSI appears more likely to be "centered" in Louisiana than in Alabama.
The weight given to these contacts is "to be evaluated according to their relative importance with respect to the particular issue." Restatement, § 145. The particular issue here is whether plaintiff's contributory negligence should completely preclude or merely reduce his recovery. We believe the domicile of the parties is especially significant in resolving this particular issue. Plaintiff is domiciled in Louisiana; after initial treatment in Alabama, he has received, and from all indications will continue to receive, medical treatment in Louisiana. The economic impact of our decision on this issue will be felt in Louisiana, not Alabama. It will affect a Louisiana domiciliary, a Texas corporation doing business in Louisiana, and an insurance company incorporated in Pennsylvania with a New York address. These facts suggest closer ties to Louisiana than to Alabama. See Davis, 283 So.2d at 790; Mitchell v. Craft, 211 So.2d 509 (Miss. 1968) (cited by the Louisiana Supreme Court to demonstrate a state's latitude in conflict questions, with this comment:
[T]he Mississippi Supreme Court applied the Mississippi doctrine of comparative negligence to a case involving Mississippi domiciliaries and arising out of an accident in Louisiana, where contributory negligence would have defeated the claim of one of the parties.
Jagers, 276 So.2d at 313.)
There is nothing in the record showing that DSI had any contact with Alabama besides its presence there on the day of the accident. We do know, however, that DSI has a significant relation with Texas, where it was incorporated,[4] and with Louisiana, where it has a place of business and whose residents it employs. No party is an Alabama domiciliary.
Considering all these contacts, we find that Louisiana has the most significant relationship to this portion of this case.
This finding comports well with the principles outlined in the Restatement, § 6:
§ 6. Choice-of-Law Principles
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,

*483 (e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Factor (a): We agree with the Second Circuit that "[c]omity does not require deference to a state with fewer significant contacts." Lee, 457 So.2d at 195.[5]
Factor (b): Louisiana has a strong interest in providing its domiciliaries the protection afforded by its clear public policy evinced in the legislative adoption of the comparative negligence doctrine. The purpose of that doctrine is to ameliorate the harsh, all-or-nothing effect of contributory negligence. Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985). "If the purposes sought to be achieved by a local statute or common law rule would be furthered by its application to out-of-state facts, this is a weighty reason why such application should be made." Restatement, § 6, Comment f.
Factor (c): We recognize Alabama's policy favoring the rule of contributory negligence and the State's interest in applying its law. Our analysis (see above) of the contacts listed in § 145 indicates that Louisiana has the greater interest. As the Reporter's Comment on § 145 points out, the states with these contacts are most likely to be interested in the case. Restatement, § 145, Comment e. We have followed the Comments on § 6 by appraising the relative interests of the states and finding the one more "deeply affected." Restatement, § 6, Comment f.
Factors (d), (e), and (f): As the Comments suggest, these are of minor importance in negligence actions. See Restatement, § 6, Comments g and i; § 145, Comment b; see also, Brinkley, 499 F.2d at 932. To the extent these factors apply to the case before us, we find in them no compelling reason to choose Alabama law over that of Louisiana.
Factor (g): This factor gives a clear advantage to neither state's law. Louisiana courts have experience with both rules, since before Louisiana's comparative negligence law became effective in 1980 it followed the contributory negligence doctrine which is currently in force in Alabama.
We hold that the Louisiana local law of comparative negligence should apply in this case. LSA-C.C. art. 2323. See generally Annot., 86 A.L.R.3d 1206 (1978):
[I]n the situation in which a resident of the forum state sued a resident of a second state for tortious conduct occurring within a third state, it has been held, again using "interest analysis" to resolve the conflict of laws, that the proper rule to be applied was the comparative negligence rule of the forum instead of the contributory negligence rule of the place of the wrongful conduct.
(Footnote omitted.)
DAMAGES
The trial court awarded $262,735.20 in damages for lost future wages. Defendants contend that this award is purely speculative and that plaintiff did not justify this award by proving that he was unable to work.
Plaintiff had been employed by Kaiser for 31 years at the time of the accident. He was then earning $2,807.00 per month. The testimony of Dr. Loupe, plaintiff, his wife, his mother-in-law, and a co-worker, established that plaintiff's injury prevented his performing the duties required by his former job. Specifically, Dr. Loupe indicated that plaintiff will continue to have difficulty doing the physical activities needed in that job. Our reading of the entire *484 record and especially the testimony of Dr. Loupe convinces us that the court was not manifestly erroneous in concluding that plaintiff was unable to return to his former job.
Factors to be considered in fixing awards for loss of earning capacity are:
age, life expectancy, work life expectancy, appropriate discount rate (also known as the investment income factor), the annual wage rate increase or productivity increase, prospects for rehabilitation, probable future earning capacity, loss of future earning capacity, loss of earning ability, and the inflation factor or decreasing purchasing power of the applicable currency.
Unbehagen v. Bollinger Workover, Inc., 411 So.2d 507, 508-509 (La.App. 1st Cir.1982). See also Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3rd Cir.1985). Considering all these factors, we cannot say that the trial court abused its much discretion in setting this amount.[6]
Defendants also complain of the award of $200,000.00 for pain and suffering, citing cases involving similar injuries in which significantly lower amounts were awarded. Plaintiff's injury was extremely painful for an extended period, and it continues to be painful. He has undergone two serious surgical procedures and lives with the prospect of another; his injured leg is shorter than the other; he has had an active lifestyle rendered sedentary. The record does not demonstrate that the trial court clearly abused its much discretion considering "the particular injuries and their effects upon this particular injured person." Reck v. Stevens, 373 So.2d 498 (La.1979).
KAISER'S APPEAL
Kaiser intervened in the principal action seeking reimbursement for the worker's compensation payments it made to plaintiff. The trial court awarded Kaiser the amount ($42,510.00) it had paid through June 7, 1984, the date trial began. Kaiser's appeal asks for reimbursement for sums it has continued to pay since that date and for judicial interest on all payments.
An employer which pays compensation benefits may bring an action to recover "any amount" paid. LSA-R.S. 23:1101. Kaiser is entitled to judgment in the amount of all sums paid to plaintiff under the worker's compensation law plus judicial interest. Lanclos v. Rockwell International Corp., 470 So.2d 924 (La.App. 3rd Cir.1985), writ denied,477 So.2d 87 (La.1985); Lachney v. Motor Parts and Bearing Supply, Inc., 357 So.2d 1277 (La.App. 3rd Cir.1978).
For the foregoing reasons, the judgment of the trial court is amended to award Kaiser an amount equal to the sum of all worker's compensation payments paid and judicial interest on all payments. This amount is to be paid in preference and priority out of the principal sum awarded to plaintiff. In all other respects the judgment is affirmed. Costs are taxed to DSI and National Union.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Nor is this the false conflict described in Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973); it is a "nonconflict."
[2] This ruling also resolves one of the issues plaintiff presents on appeal, i.e., whether the trial court properly assessed 10% fault to plaintiff.
[3] Haynes' residence in Louisiana is important because it indicates DSI's relationship with this State. The Restatement does not list residence of witnesses as a factor in the choice-of-law decision, but we note that Haynes, plaintiff and all the witnesses who testified were Louisiana residents. Only Dr. Granger, plaintiff's Alabama surgeon, whose deposition was admitted into evidence, was an Alabama resident. This court has found the residence of witnesses a factor. Davis v. Humble Oil & Refining Company, 283 So.2d 783 (La.App. 1st Cir.1973).
[4] We note in passing that Texas has adopted a comparative negligence rule. Vernon's Civ. Stats. Texas Ann., art. 2212a.
[5] Our consideration of the needs of the interstate system might be different if we were required to address a conflict of laws involving standards of negligence. Our concern here is only with the effect a finding of negligence has on plaintiff's recovery. The discussion above relative to where the parties are domiciled, where they do business, and where the economic impact of the decision will be felt demonstrated Louisiana's interest in the application of its law. Given those factors, we perceive no significant burden on our federal system by the application of Louisiana rather than Alabama law.
[6] The trial judge's reasons for judgment do not indicate that he considered all these factors. However, we are called on to review only the trial court's judgment, not the reasons for it. State in Interest of Mason, 356 So.2d 530 (La.App. 1st Cir.1977).