# Victor Amiot v. David Ames

[693 A.2d 675]

No. 96-134

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed February 28, 1997

*Stephen J. Craddock*, Montpelier, and *Jeffry W. White*, Royalton, for Plaintiff-Appellee.

*Richard H. Wadhams, Jr.*, and *James E. Preston* of *Pierson, Wadhams, Quinn & Yates*, Burlington, for Defendant-Appellant.

**Gibson, J.** Defendant David Ames seeks interlocutory review of the Orleans Superior Court's denial of his motion to dismiss, ruling that Vermont law applies to a motor vehicle accident in Quebec between Canadian and Vermont residents. Defendant claims the court erred in refusing to follow the choice-of-law rule of lex loci delicti, which would require applying Quebec law. In the event this Court agrees with the trial court and adopts the Restatement's significant-relationship approach, defendant contends the trial court erred in concluding that Vermont law applies. We affirm the court's use of the significant-relationship approach to choice of law, but because of the sparseness of the factual record, we remand for the trial court to make the choice-of-law determination following development of an evidentiary record.

In November 1992, defendant Ames struck plaintiff Victor Amiot's vehicle, in which plaintiff was a passenger, while plaintiff's vehicle was stopped at Canadian customs just across the Quebec-Vermont border. Plaintiff, who is a resident of Alberta, Canada, had just left Vermont and entered Quebec en route from New Brunswick to Alberta. Plaintiff alleges that defendant, a resident of Vermont, suffered a complication from diabetes while driving in Vermont and consequently lost control of his car, missed his exit, and crossed the border, striking plaintiff's vehicle. As a result of the accident, plaintiff incurred injuries and was forced into premature retirement.

In September 1995, defendant filed a motion to dismiss, asserting that under Vermont's choice-of-law doctrine either Quebec or Alberta law must be applied to the suit.[1] Because Alberta law would require application of Quebec law and because Quebec statutorily limits liability, defendant alleges that plaintiff would have no

---

[1] Plaintiff contends the trial court abused its discretion in allowing defendant to file a V.R.C.P. 12(b)(6) motion, in conjunction with a proposed pleading amendment raising the choice-of-law defense, eleven months after defendant filed his answer. We have consistently held that allowing amendment of the pleadings is left to the discretion of the trial court, and we will reverse such rulings only when the court abuses its discretion. *Lillicrap v. Martin*, 156 Vt. 165, 170, 591 A.2d 41, 44 (1989). Plaintiff makes no showing of prejudice; accordingly, we find the court did not abuse its discretion in allowing defendant to file his Rule 12(b)(6) motion. See *Brown v. Whitcomb*, 150 Vt. 106, 109, 550 A.2d 1, 3 (1988).

right to recover damages under Vermont law. In January 1996, the court denied defendant's motion to dismiss. The court predicted that Vermont would no longer automatically apply the substantive law of the state or country where the accident occurred and would instead adopt the significant-relationship approach. Under this approach, the court concluded that Vermont had the most significant relationship with the incident. This interlocutory appeal followed.

## I.

A motion to dismiss for failure to state a claim upon which relief can be granted, V.R.C.P. 12(b)(6), should not be granted unless "it appears beyond doubt" that there exist no facts or circumstances that would entitle the plaintiff to relief. *Levinsky v. Diamond*, 140 Vt. 595, 600-01, 442 A.2d 1277, 1280-81 (1982). In reviewing disposition of a motion to dismiss, we must assume as true all factual allegations pleaded by the nonmoving party. *Association of Haystack Property Owners v. Sprague*, 145 Vt. 443, 444, 494 A.2d 122, 123 (1985). All reasonable inferences that can be drawn from the nonmoving party's pleadings are accepted, and all contravening assertions in the movant's pleadings are assumed to be false. *White Current Corp. v. State*, 140 Vt. 290, 292, 438 A.2d 393, 394 (1981) (per curiam), *overruled on unrelated grounds by Soucy v. Soucy Motors, Inc.*, 143 Vt. 615, 471 A.2d 224 (1983).

Defendant first argues that the trial court erred in not following the doctrine of lex loci delicti, whereby Quebec law would apply, noting that we have resolved past choice-of-law issues in tort actions by holding that the rights and liabilities of the parties are determined by the laws of the state or country in which the incident occurred. See *Goldman v. Beaudry*, 122 Vt. 299, 301, 170 A.2d 636, 638 (1961); *Brown v. Perry*, 104 Vt. 66, 71, 156 A. 910, 913 (1931). But *Goldman* was decided under the first Restatement of Conflict of Laws, which endorsed lex loci, 122 Vt. at 301, 170 A.2d at 638. Since that time, we have not had occasion to revisit the issue, although we have acknowledged the federal courts' predictions that we would abandon lex loci in favor of a more flexible approach. *Calhoun v. Blakely*, 152 Vt. 113, 116 n.2, 564 A.2d 590, 592 n.2 (1989); see, e.g., *In re Air Crash Disaster*, 399 F. Supp. 1106, 1111 (D. Mass. 1975).

Since the decision in *Goldman*, the Restatement (Second) of Conflict of Laws has abandoned the doctrine of lex loci in tort actions and adopted the approach that rights and liabilities should be governed by the state that has the most significant relationship to the

occurrence and the parties. Restatement (Second) of Conflict of Laws 413 (1971). This reform reflects changes in our society, where state and national boundaries have become less significant as people become more mobile and where judges are better prepared to consider the policies and values that underlie choice-of-law decisions. *Id.*

■ In 1968, we adopted the significant-contacts approach of the Restatement (Second) for choice-of-law decisions in contract cases. See *Pioneer Credit Corp. v. Carden*, 127 Vt. 229, 233, 245 A.2d 891, 894 (1968). Likewise, today we adopt the Restatement (Second) approach that choice of law in a tort action that implicates states or countries beyond Vermont will be determined by which state or country has the most significant relationship to the occurrence and the parties. Restatement (Second) of Conflict of Laws § 145(1). We overrule our prior cases to the extent they hold to the contrary.

Anticipating that this Court might adopt the significant-relationship theory of choice of law, defendant argues that the trial court erred in concluding that Vermont law would apply. In a personal injury action, the state or country[2] with the most significant relationship will usually be that where the injury occurred, see, e.g., *Glasscock v. Miller*, 720 S.W.2d 771, 774, 776 (Mo. Ct. App. 1986) (court should have applied Colorado law where parties resided in Missouri but injury and conduct occurred in Colorado), unless some other jurisdiction has a more significant relationship, as determined by the principles stated in § 6. Restatement (Second) of Conflict of Laws § 146. A more significant relationship often exists where the place of injury has little relationship to the parties or the place where the causative conduct occurred. *Id.* § 146 cmt. c; see *Gordon v. Kramer*, 604 P.2d 1153, 1158 (Ariz. Ct. App. 1979) (court erred in applying Utah law where, although accident occurred in Utah, Utah had no interest in occurrence or parties).

---

[2]The Restatement (Second) notes that recommended choice-of-law principles are equally applicable to foreign nations, although there may be factors in an international case that would call for a different result than if the choice were between the laws of two or more states. Restatement (Second) of Conflict of Laws § 10. Factors that call for a different outcome include consideration of the country's political, social, and legal institutions; American constitutional safeguards; and foreign legal relationships unknown under American law. *Id.* § 10 cmt. d. We do not find the differences between Canadian and American legal, social, or political systems to have a significant impact on our analysis.

■ Where the place of injury has little relationship to the parties or causative conduct, determining the jurisdiction with the most significant relationship is guided by the general choice-of-law principles of §§ 6 and 145. Factors to consider include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6. In assessing these factors, the trial court should consider contacts relevant to the incident, including "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* § 145(2).

But not all § 6 factors carry equal weight. The protection of justified expectations, policies underlying the field of law, and certainty, predictability, and uniformity are less important in the field of torts, with the remaining factors assuming greater importance. *Id.* § 145 cmt. b; see, e.g., *Brown v. DSI Transps., Inc.*, 496 So. 2d 478, 482-83 (La. Ct. App. 1986) (focus is on needs of interstate systems and interests and policies of potential states in negligence action; § 6(2)(d), (e), (f) factors are of minor importance). In addition, a court may decide that the law governing the standard of conduct is different from that governing damages. Restatement (Second) of Conflict of Laws § 171 & cmt. b; see *Thomas v. Hanmer*, 489 N.Y.S.2d 802, 805 n.* (App. Div. 1985).

■ The sparsity of the record prevents us from deciding which law should apply. The parties agree in their pleadings that plaintiff is a resident of Alberta and defendant is a resident of Vermont. But the parties dispute (and the trial court did not hear evidence on) other

factual issues, such as the location of the conduct that led to the injury. Therefore, we remand the case for the court to determine which jurisdiction has the most significant relationship to the event. Cf. *Godino v. Cleanthes*, 163 Vt. 237, 239, 656 A.2d 991, 992 (1995) (preferable for trial court to conduct evidentiary hearing on merits of Rule 12(b) motion where there are disputed issues of fact); see also *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) (where trial court failed to make findings of fact essential to proper resolution of legal question, proper course is to remand for court to make findings). The trial court will have to choose the appropriate law guided by the above principles after the factual record is further developed.

## II.

The question remains as to who should decide the factual basis to which law applies — the judge or the jury. In a persuasive analysis of this issue, the Eastern District of New York concluded that constitutional guarantees of a trial by jury do not mandate jury determination of every issue of fact, that a jury is not well-equipped to make the analysis called for by the Restatement (Second), and that the facts underlying a choice-of-law decision are generally better left to the judge rather than the jury. *Chance v. E.I. Du Pont de Nemours & Co.*, 57 F.R.D. 165, 168-70 (E.D.N.Y. 1972). We have held that "[t]hreshold determinations of legal issues" are properly the province of the court. *State v. Ryea*, 153 Vt. 451, 456, 571 A.2d 674, 677 (1990). This necessarily includes fact-finding decisive to such legal issues. Examples include determinations of personal and subject matter jurisdiction, venue, competency of witnesses, and admission of evidence. See W. Reese, et al., *The Role of the Jury in Choice of Law*, 25 Case W. Res. L. Rev. 82, 89 (1974) (discussing preliminary factual issues appropriate for determination by judge). In such areas, the pertinent facts are found by the judge even though these facts may be "intertwined with the ultimate issue on the merits." *Chance*, 57 F.R.D. at 169.

The Restatement (Second) provides little guidance on who should determine choice-of-law facts, providing only that "[t]he local law of the forum determines whether an issue [relevant to a choice-of-law decision] shall be tried by the court or by a jury." Restatement (Second) of Conflict of Laws § 129. Nonetheless, except in the rarest of circumstances, considerations of practicality and necessity strongly point to the judge, not the jury, as the one who should decide such

questions. While the location of various contacts (set forth in Restatement (Second) § 145(2)) may raise factual issues, the task of evaluating and balancing the § 6 factors, as they apply to the facts, is a matter of law rather than fact and one that is more properly left to the judge. Reese, *supra*, at 101.

> [I]t is almost impossible to imagine a situation in which the judge could simply charge that judgment should be rendered for one party or the other if the jury were to find that a particular contact was situated in a particular state. Instead, he would have to resort to impractical alternatives. Either he would first have to ask the jury to determine the location of the contact and then, after having decided the choice-of-law question on the basis of their decision and of the evaluating and balancing process . . . he would deliver a second and final charge to the jury on the merits. Or he could deliver a single charge to the jury in which he would have to spell out the alternative judgments they should render depending upon their decision with respect to the location of the contact. The potential complexities of such a charge make clear the inadvisability of attempting it.
>
> . . . .
>
> . . . In addition, the judge would frequently have to do more than simply instruct the jury that their verdict should be for a given party if the contact in question was found to be located in a particular state. Sometimes, he would have to go further and actually inform the jury of the content of the relevant rules of all states in which the contact could reasonably be placed.

*Id.* at 101-02, 105.

The situation becomes even more bothersome when the choice-of-law issue emerges early in the lawsuit before a jury has been impanelled, as is the case here on defendant's motion to dismiss. Reserving choice-of-law issues for determination by a jury at trial not only raises the problems described above, it also precludes the efficient disposal of cases through motions to dismiss or for summary judgment, forcing parties to undergo the time and expense of trial only to risk having their case eventually dismissed upon some collateral jurisdictional ground. See *LeBlanc v. Stuart*, 342 F. Supp. 773, 775-76 (D. Vt. 1972) (court's grant of summary judgment

precluded wife's action against deceased husband's estate upon conclusion that Rhode Island, rather than Vermont, law applied). Thus, factual determinations necessary to decide which state or country has the most significant relationship to the occurrence and parties are better left to the court, even when the ultimate determination of the facts is left to a jury.

The dissent asserts that the law supports this case as one where a jury should determine which jurisdiction has the most significant relationship to the incident. Although the dissent cites *Marra v. Bushee*, 447 F.2d 1282, 1285 (2d Cir. 1971) (defendant entitled to jury's findings of facts determinative of choice-of-law principles), as the "seminal decision," 166 Vt. at 298, 693 A.2d at 681, there is no indication that other courts have adopted *Marra*'s approach in the twenty-five years since it was decided. The Eastern District of New York reviewed *Marra* in its thorough assessment of the theoretical, constitutional, and practical considerations that support judicial determination of choice-of-law facts, and concluded that "[t]o extend jury trial to the choice of law issues would result in delay and confusion thereby impairing the right to jury trial on the merits." *Chance*, 57 F.R.D. at 171. A case the dissent cites for support merely noted that no party had argued for jury determination of the choice-of-law factors, cited *Chance* and *Marra* as support for opposing analyses, and concluded that choice-of-law issues were properly decided by the trial court. *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 386-87 & n.8 (5th Cir. 1983), *overruled on unrelated grounds by In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987). Thus, other courts have generally agreed that choice-of-law determinations are properly left to the court.

*Affirmed; cause remanded for further proceedings consistent with this opinion.*

**Morse, J.,** concurring and dissenting. I concur in the Court's endorsement of the significant-relationship approach to choice of law. I dissent, however, from its holding that on remand the choice-of-law determination should be made by the trial court. When an issue of fact upon which the choice-of-law decision turns is determinative of an ultimate issue on the merits, resolution of that fact properly rests with a jury. Our Constitution explicitly provides "[t]hat when any issue in fact, proper for the cognizance of a jury is joined in a court of law, the parties have a right to trial by jury, which ought to be held sacred." Vt. Const. ch. I, art. 12; see *Hodgdon v. Mt. Mansfield Co.*,

160 Vt. 150, 155, 624 A.2d 1122, 1125 (1992). Although many factual issues involving such preliminary questions as choice of law, jurisdiction, venue, service of process, and discovery may — and should — properly be resolved by a judge, when such an issue is inextricably intertwined with the merits of the case, in my view the Constitution requires that it be resolved by a jury.

That is precisely the situation presented here. Plaintiff has alleged that defendant, a Vermont resident, negligently failed in Vermont to administer the insulin necessary to control his diabetes, causing defendant to lose control of his vehicle in Vermont, cross the border into Quebec, and strike the rear of plaintiff's automobile. In these circumstances, a consideration of fundamental importance in determining which jurisdiction has the most significant relationship to the occurrence is the place where the conduct causing the injury, that is, the negligent conduct, occurred. Restatement (Second) of Conflict of Laws § 145(2)(b) (1971). Indeed, this factor was given decisive weight in the trial court's decision to apply Vermont law. As the court explained:

> That the site of actual damage was Quebec was merely a coincidence of defendant's alleged negligence on the Vermont side of the border.
>
> "When [the place] of injury . . . is fortuitous and, with respect to the particular issue, bears little relation to the occurrence and the parties, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law."

(quoting Restatement (Second) of Conflict of Laws § 145 cmt. e).

The trial court's choice-of-law decision was dispositive of whether plaintiff even had a valid cause of action. If, as the court ruled, Vermont law applied, plaintiff could proceed with his civil action against defendant. If, however, the court had decided that this was simply a "rear-ender" caused solely by defendant's inattention over the border in Quebec, plaintiff's case would have been barred by a rule of that province limiting plaintiff to an administrative remedy.

On remand, the trial court is ordered by this Court to reconsider its ruling in light of the facts found in an evidentiary hearing. This can lead to one of two results. If the trial court decides the evidence supports plaintiff's claim that defendant's allegedly negligent conduct occurred in Vermont, it will, presumably, make the same choice-of-law decision and allow the case to proceed. Having resolved that factual

issue, however, the trial court would presumably not allow the issue to be relitigated, but rather would instruct the jury to assume plaintiff's allegation to be true. Thus, defendant would be denied a jury trial on the ultimate issue in the case. Alternatively, should the trial court conclude that the evidence does not support plaintiff's claim that defendant failed to administer the insulin in Vermont, the case would presumably be dismissed, and plaintiff would be denied a jury determination on the merits of the ultimate issue.

Thus, this case presents a rare, but nevertheless important occasion to depart from the general rule that threshold determinations of fact necessary to a choice-of-law decision should generally be left to the court. See W. Reese, et al., *The Role of the Jury in Choice of Law*, 25 Case W. Res. L. Rev. 82, 106 (1974) ("[T]he question whether to submit [a fact question] to the jury after the close of evidence should normally be answered in the negative. There may be occasions, however, when . . . the jury is better qualified than [the court] to decide the issue.").

The Restatement does not address the question whether judge or jury should make such preliminary determinations, and case law is scarce. Nevertheless, there is clear support for the proposition that the jury should prevail when choice-of-law issues and the merits are so "factually meshed" that a "ruling thereon would have disposed of the merits of the[] cause of action, and therefore should have been deferred until a trial on the merits." *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 387 (5th Cir. 1983), *overruled on unrelated grounds by In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987).

The seminal decision is *Marra v. Bushee*, 447 F.2d 1282 (2d Cir. 1971). In that case, judgment for the plaintiff was reversed because of the trial judge's failure in an action for alienation of affections to submit to the jury the question whether the defendant's conduct had "primarily occurred" in New York or Vermont. *Id.* at 1283. The defendant, a resident of Vermont, had moved for a directed verdict at the close of the plaintiff's case, and again at the conclusion of the evidence, asserting that any alienation of affections had occurred in the plaintiff's home state, New York, which had abolished the cause of action. The trial court disagreed. "On the premise that a factual finding territorializing the defendant's conduct was a jurisdictional matter not within the province of the jury, the district court itself concluded 'that the conduct which constituted the alienation occurred principally in Vermont and the applicable law is Vermont law.'" *Id.*

The Court of Appeals reversed, holding that where "tort liability turned upon resolution of the choice-of-law question, . . . the defendant was entitled to the jury's consideration." *Id.* at 1284. *Marra* relied, in turn, upon *Orr v. Sasseman*, 239 F.2d 182 (5th Cir. 1956), another alienation of affections case in which the situs of the defendant's conduct, Georgia or Illinois, determined the choice of law, and the viability of the claim. In affirming judgment for the plaintiff, the *Sasseman* court "expressly approved the trial court's [jury] instruction that if the loss of consortium occurred in Illinois, the verdict must be for the defendant; but if the claim arose in Georgia there could be a verdict for the plaintiff." *Marra*, 447 F.2d at 1284.

Here, similarly, the trial court on remand should be directed to frame a simple jury interrogatory asking whether the defendant was negligent, and if so, whether the negligence occurred in Vermont. If the jury answers both questions in the affirmative, then it may return a verdict for the plaintiff. If it answers either question in the negative, then the verdict must be for defendant. Whatever "efficiency" might be lost through this procedure is more than compensated by the constitutional principle — the right to trial by jury — that it preserves.