Filed 01/16/26

VERMONT SUPERIOR COURT  
Bennington Unit  
207 South St  
Bennington VT 05201  
802-447-2700  
www.vermontjudiciary.org



CIVIL DIVISION  
Case No. 25-CV-01511

---

**Pownal Center Community Church v. Town of Pownal, a Vermont Municipality**

---

## ENTRY REGARDING MOTION

Title:         Motion to Dismiss Amended Complaint (Motion: 4)  
Filer:          Robert M. Fisher  
Filed Date:    September 09, 2025

      Plaintiff, Pownal Community Center Church, has filed an *Amended Complaint* to quiet title to the property at 495 Center Street, Pownal, Vermont, which includes the church building, shed, and grounds. Defendant, the Town of Pownal, has filed a *Motion to Dismiss Plaintiff's Amended Complaint* for a lack of claim. For the reasons below, the motion to dismiss (Motion 4) is denied in part, and granted in part.

### Facts

      The following section summarizes the relevant facts as they appear in the Church's complaint and matters deemed part of the complaint, for purposes of Rule 12(b). All reasonable inferences have been drawn in favor of the Church:

      The town of Pownal was chartered by the Governor of New Hampshire in 1760, and a glebe, or perpetually leased lands for church purposes, was set aside in that charter. *Ex. 1.* After that, the townspeople of Pownal raised a meetinghouse; the plans for raising funds and intent to build this meetinghouse were recorded in 1790, stated as a set of written "proposals" by the First Baptist Church. *Ex. 3*, *Ex. 9.* The meetinghouse served dual function as the First Baptist Church and town meeting place with the Town primarily paying for repairs to the building through 1850. *Ex. 4.*

      Questions as to which entity possessed the title to the full 495 Center Street property were raised by the Town as early as 1849. *Id.* Around 1850, the meetinghouse building was in enough disrepair to require rebuilding, and some sort of interfaith committee, made up of representatives from the Episcopal Church,[1] the Baptist Church, and townspeople from Pownal,

---

[1] The Episcopal Church is an American branch church which separated from the Church of England after the American Revolutionary War made it impractical for the church headed by the monarchy of England to continue acting as a major Christian denomination in the English-speaking part of this county. See Carl H. Esbeck, *Dissent and Disestablishment: The Church-State Settlement in the Early American Republic*, 2004 BYU L. Rev. 1385, 1560–61 (2004); see also Alyssa Penick, *From Disestablishment to* Dartmouth College v. Woodard*: How Virginia's Fight over Religious Freedom Shaped the History of America's Corporations*, 39 Law & Hist. Rev. 479, 507 (2021) (discussing Vermont's statutorily enabled glebe land confiscation from the Church of England).

raised funds to repair the building and use it as a place of nonspecific religious worship. *Id.*; *Am. Compl.* ¶ 13. The Town continued to use the building when it was not in use as a church. Around 1905, the Town conveyed title and all rights for a small portion of the 495 Center Street property to "Trustees for Church" and the community of Pownal so the Church could construct a carriage shed. *Ex. 5.*

From the 1950s onward, the current iteration of the Church appears to have been in control of the church building, and worked with the Town to coordinate repairs, maintenance of the whole property, and funding for these liabilities. *Ex. 7.* In the 1970s, the question as to which entity held the title to the 495 Center Street property kept returning, with the Town claiming at times the Church owned the building, but the Town the land, including the carriage shed, or statements the Town owned the whole property, or the Town entering into talks regarding turning over potions of the land to the church, but then retracting the offers. *Ex. 7.* In 1976, the Town determined the quitclaim deed for the carriage shed granted to the "Trustees for Church" in 1905, had been granted to the current plaintiff Church and the "community" of Pownal. The Town claimed it held no interest in the building, and therefore the Church would be responsible for repairs to the carriage shed. *Ex. 7.* By 1980, the Church carried insurance for the 495 Center Street property, although it was shared with the Town, which still held meetings in the basement of the church building. *Ex. 7*, *Ex. 8.* In 1991, the Town stopped using the basement for meetings. *Am. Compl.* ¶ 20. The question of who held title to the property was still an issue as of 1999, while the Church worked to get permission from the Town for a "long sought after bathroom." *Ex.* 7. Currently the Church appears to provide most of the basic maintenance and services to the 495 Center Street property, with the Town providing fewer and fewer over time.

## Procedural Standard

A motion to dismiss for failure to state a claim faces a high bar. "A motion to dismiss for failure to state a claim is not favored and rarely granted." *Gilman v. Me. Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 14, 175 Vt. 554 (mem.). "The legal theory of a case should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations." *Ass'n of Haystack Prop. Owners, Inc. v. Sprague*, 145 Vt. 443, 447, 494 A.2d 122, 125 (1985). The court takes the nonmoving party's factual allegations from the complaint as true and assumes the movant's contravening assertions are false. *Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co.*, 2022 VT 45, ¶ 17, 217 Vt. 195. The court "also accept[s] all reasonable inferences that may be drawn from those facts." *Ferry v. City of Montpelier*, 2023 VT 4, ¶ 22, 217 Vt. 450 (internal quotation marks omitted). The court only grants a motion to dismiss when "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Amiot v. Ames*, 166 Vt. 288, 291, 693 A.2d 675, 677 (1997) (internal quotation marks omitted). The record for Rule 12(b)(6) purposes generally is limited to the four corners of the complaint and any attachments to it. *Nash v. Coxon*, 152 Vt. 313, 314–15, 565 A.2d 1360, 1361 (1989).

## Count 1: Acquisition of Title under 24 V.S.A. § 2409

Title 24 V.S.A. § 2409 states:

> On January 1, 2020, fee simple title to perpetual lease lands shall vest in the current lessee of record, free and clear of the interest of a municipal corporation in the perpetual lease lands held in accordance with section 2401 of this title, unless prior to that date the legislative body of the municipal corporation votes in the affirmative to retain ownership of some or all of the perpetual lease lands within that municipal corporation.

24 V.S.A. § 2409(b)(1). Perpetual lease land includes "lands in the town granted under the authority of the British Government as glebes for the use of the Church of England and now by law granted to such town for the use of schools, and lands granted to the use of the ministry or the social worship of God[.]" 24 V.S.A. § 2401. In 1787, the legislative body of what would become the State of Vermont enacted a law that vested possession of glebe land in the towns where the glebes lay. See 24 V.S.A. § 2402. Under the two statutes, which are now codified at 24 V.S.A. § 2401–02, towns could then determine what use to make of the property or give the use over to whatever entity they felt appropriate.

The Church claims to possess legal title to the 495 Center Street property through several theories. First, it claims the recording of the intent to turn glebe land into the First Baptist Church in 1790 shows the existence of a leasehold granted to the First Baptist Church. The interest in that leasehold then was passed along to the successor organizations which managed the religious aspect of the property. As this leasehold is in perpetual lease land, and the Town made no affirmative act to retain ownership of those lands as required by statute, the Church claims it now possesses the title. The Town contends the current Church is not the lessee of record and cannot be held to be the successor in interest to the original lessee of record.

Here, the Church of England was granted a glebe in Pownal by charter. The First Baptist Church appears to have obtained a claim of some sort in that glebe through its "proposals" recorded in 1790, three years after the state enacted the statutes which gave the Town right to take over maintenance of glebe lands and granted the town right of possession for any glebe properties which weren't already disposed of. See 24 V.S.A. § 2401–02 (*originally enacted in* R. 1787 p. 7); cf. *Town of Bethel v. Welford*, 2009 VT 100, ¶ 12, 186 Vt. 612 (holding historic evidence of ancient road sufficient to establish existence of town highway despite unclear land records). The Church built out of those proposals used the glebe land and managed it jointly with the Town, which also used the glebe land. Representatives of the Episcopal Church apparently united with representatives of the First Baptist Church to create the current church building, and potentially the organizational structure for Plaintiff around 1850. For the long history of this property, the Town has treated the representatives of the congregations which meet in the church building as the either the same entity, or successor entities, for the purposes of property management, as can be seen from the 1970s discussion around title to the carriage shed granted to the 1905 iteration of the Church. The current record does not show the Town voted affirmatively to retain the glebe land prior to January 1, 2020. See 24 V.S.A. § 2409(b)(1). This is enough to suggest the Church has a claim. The Town's motion as to Count 1 is denied.

**Count 2 and Count 3: Adverse Possession and Prescriptive Easement**

The second theory is that if the Church is not the current recorded lessee, or the successor in interest to the lessee, the long history of the continuous use of the property by the Church, and the Town pushing the Church to assume more and more of the liabilities for the property, which the Church has assumed, mean the Church has obtained title through adverse possession. The third theory raises an alternative, that the Church has acquired title through prescriptive easement. This theory is based in the same reasoning as the theory of title through adverse possession. The Town contends this court already dismissed the claims based on adverse possession and prescriptive easement in its decision on the original motion to dismiss, and therefore these claims should be dismissed in the amended complaint.

This court has already dismissed claims made for adverse possession and prescriptive easement. While the Vermont Supreme Court has held a party may adversely possess lands against a municipality, it is only under very certain circumstances which do not apply here. See *Jarvis v. Gillespie*, 155 Vt. 633, 642–43 (1991). By statute, a party may only claim title through adverse possession after the statute of limitations for recovery of land has run. 12 V.S.A. § 501. However, 12 V.S.A. § 501, the statute of limitation for adverse possession, does not apply to municipal lands given to "a public, pious, or charitable use[.]" 12 V.S.A. § 462. The 495 Center Street property has been used for either public or pious purposes throughout its history.

Additionally, as discussed in the prior decision, title to a glebe cannot be acquired by adverse possession. See *Brown v. Derway*, 109 Vt. 37, 43 (1937) (ruling that disputed glebe land could not be acquired by adverse possession). The Church cannot adversely possess this property. As prescriptive easement relies on the same statute of limitations as adverse possession, the Church cannot make a claim to prescriptive easement, either. The Town's motion as to Count 2 and Count 3 is granted.

**Count 4: Declaratory Relief Act**

Declaratory relief may be granted when "[a] person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." 12 V.S.A. § 4712. The court could issue declaratory relief "if it serves useful purpose of clarifying legal relations of parties or terminating insecurity and uncertainty of controversy." *Cooperative Fire Ins. Ass'n of Vermont v. Bizon*, 166 Vt. 326, 331 (1997).

The Church also requests relief in the form of a declaratory judgment, as to the respective rights to the property held by the Church and the Town given the facts of the case. The Town contends that as the Church cannot prove it is the successor in interest to the lessee of record, it has no interest in the title and cannot be entitled to declaratory relief.

Here is a piece of property which has seen mixed use by the Town and Church over time. Both entities are unclear as to the right to title for the full property, usually when lack of clarity is the determinative factor as to which party will pay for repairs or provide essential services for the

church building. Historically, the lack of clarity regarding title has made serious structural issues and repairs on this property drag out for years[2] as the Church and Town negotiate regarding what entity controls what part of the property and must shoulder the bill or provide the service. As the Church operates from the church building, it is certainly a party with interest in the rights and legal relations regarding the property, which would provide final clarity as to what entity is responsible for what portion of the property. Therefore, the Church has a claim for declaratory relief. The Town's motion as to Count 4 is denied.

## Order

The Town's motion to dismiss (Motion 4) is denied in part and granted in part.

The Town's motion to dismiss Count 1 of Plaintiff's complaint is denied.

The Town's motion to dismiss Count 2 of Plaintiff's complaint is granted.

The Town's motion to dismiss Count 3 of Plaintiff's complaint is granted.

The Town's motion to dismiss Count 4 of Plaintiff's complaint is denied.

**Signed electronically January 16, 2026 pursuant to V.R.E.F 9(d).**

_____
**David Barra**
**Superior Court Judge**

---

[2] The "long sought bathroom," for example, seems to have emerged as a request for a single chemical toilet in 1979, and was apparently unresolved as of 2005. *Ex. 7.*